FIDELITY TRUST COMPANY

*v.*

MADELINE BAKER et al.

[Filed August 4th, 1900.]

1. The negligence of a bank in crediting the account of a depositor with the amount of a forged check for a large sum, without inquiry as to the truth of the statements of the depositor when presenting same, will not prevent the bank from following its money into the hands of one who received it with notice of the fraud.

2. Money, although procured by fraud or felony, cannot be followed into the hands of a person who has received it innocently in satisfaction of an existing debt.

3. Certified checks, when used and accepted as money in payment of debts, must be treated as money and are entitled to the same protection.

On bill, amended bill, answers, replication and proofs.

*Mr. Robert H. McCarter,* for the complainant.

*Mr. Alfred F. Skinner,* for the defendants Baker.

*Mr. Corra N. Williams,* for the defendant Thompson.

EMERY, V. C.

Complainant's case depends upon its right to follow funds procured from it by the fraud and forgery of one of the defendants, and which were paid over by this defendant to or for the benefit of the other defendants. The relevant substantial facts appearing by the pleadings and proofs are as follows:

In March or April, 1897, the defendant Byram, an attorney and solicitor, received from the defendant Madeline Baker, as guardian, $5,500 for investment upon a first mortgage upon land of the defendant Thompson.

This property was then encumbered by two mortgages, a

first mortgage for $1,300 and a second mortgage held by the defendant Plaut for $4,200, and the money advanced by Mrs. Baker upon the mortgage to be given by Thompson was, by agreement between Thompson and Mrs. Baker, to be used in paying off the two prior mortgages so that her mortgage would be a first mortgage. Byram was applied to by Thompson to procure a loan for the purpose of paying off the mortgages, and he applied to Mrs. Baker, for whom he had acted as attorney in several matters. Byram acted for both Thompson and Mrs. Baker, no other solicitor being employed, and he was relied on by both parties to see that the prior mortgages were paid, and that the necessary legal formalities were complied with. Thompson gave the bond and mortgage for $5,500 to Mrs. Baker, which were duly recorded, and upon the execution of the bond and mortgage, which were left in Byram's hands, the money was paid to Byram by Mrs. Baker for the purpose of paying off the prior mortgages. The $1,300 mortgage was so paid off at the time and an assignment by the mortgagee to Mrs. Baker was executed and delivered to Byram, who, however, did not inform Mrs. Baker of the assignment, and it remained in his possession without her knowing of it until October, 1898. Byram also paid off about the time of procuring the money from Mrs. Baker, $2,000 of the Plaut mortgage, informing Mr. Weeks, the attorney of Mrs. Plaut, to whom he paid the money, that his client, Mr. Thompson, was not able to pay off the whole mortgage as he (Byram) had previously notified Mr. Weeks he would do. Until October 26th, 1898, both Mrs. Baker and Thompson supposed the entire amount of the Plaut mortgage had been paid with the money advanced by Mrs. Baker, and that the Baker mortgage was a first mortgage. No special inquiries, however, were made of Byram by either Mrs. Baker or Thompson as to the actual payment or cancellation of the prior mortgages, each of them relying upon Byram, in whom they had confidence, to protect their rights in this respect. Byram himself paid the interest on the Plaut mortgage to Mr. Weeks after April, 1897. Thompson, subsequent to the execution of the Baker mortgage, paid interest on this mortgage only, one payment being made to Byram for Mrs. Baker, and the other (by Mr. Baker's subse-

quent directions) to Mrs. Baker herself. Byram misappropri-
ated the remaining $2,200 received from Mrs. Baker in March,
1897, without her knowledge that he had done so, and on Octo-
ber 24th, 1898, Byram, by fraud and the delivery of a forged
check or draft, procured a deposit credit of $15,000 from com-
plainant, against which he was allowed to have his checks certi-
fied, among others a check for the money now in question for
$2,255, dated October 25th, 1898, and payable to the order of
William R. Weeks, attorney, when it was certified. On the same
day—October 25th, 1898—Byram enclosed this check in a letter
to Mr. Weeks who was the attorney for Mrs. Plaut, as a payment
of the balance due on her mortgage on Thompson's property,
and in the letter requested him to receipt payment in full on
the mortgage and have it canceled of record, and then deliver
it to Mrs. Baker. Upon the receipt of the check on the morning
of the 26th, Mr. Weeks, as attorney of Mrs. Plaut, endorsed the
mortgage as paid and wrote on it an authority to the register to
cancel, but, considering that the cancellation was a matter for
Mr. Baker to attend to, rather than himself, notified Mr. Baker
at once to call at his office for the papers. Mr. Baker did so,
was then first informed of the payment by Byram and its pur-
pose and received the bond and mortgage from Mr. Weeks on
the 26th of October, but withheld the cancellation until he could
procure information in reference to the matter from Mr. Byram
or Mr. Thompson. Subsequent to Mr. Baker's receipt of the
mortgage, and on the same day, the certified check was presented
for payment by Mr. Weeks on his behalf, but complainant hav-
ing learned of the forgery, payment was refused for that reason
given. After this refusal Mr. Uzal McCarter, the president of
the complainant company, had an interview with Mr. Baker in
which he notified Mr. Baker that the check had been obtained
by the fraud and forgery of Byram, and after an interview, the
accounts of which are very contradictory, procured a short
delay in the cancellation of the mortgage. The certified check
was duly paid on the morning of the 27th, and the bill was
subsequently filed to restrain the cancellation of the Plaut
mortgage and to compel repayment by Mrs. Plaut or to rein-
state the Plaut mortgage as an existing security on defendant

Thompson's lands prior to the Baker mortgage, and subrogate complainant to its benefit, or for such other relief as complainant may be entitled to. On the hearing the validity of the payment to Mr. Weeks for the defendant Plaut is not contested by complainant, nor is it claimed that Mrs. Plaut can be held liable for the repayment of the money. In view of the settled rules applicable to the case, such claim could have no foundation. Money, although procured by fraud or felony, cannot be followed into the hands of a person who has received it innocently in satisfaction of an existing debt. This rule is based not upon the ground that the payment of an antecedent debt is a valuable consideration which will cut off the equities of third parties, but upon rules of public policy relating to money and currency, enforced for the prevention of the confusion and uncertainty which would inevitably result if a creditor, who received money in payment of a debt in due course of business and without notice, was subject to the risk of accounting therefor to a third person, who might be able to show that the money was obtained from him by felony or fraud. *Stephens* v. *Board of Education, 79 N. Y. 183 (1879)* ; *Justh* v. *National Bank of Commonwealth, 56 N. Y. 478; Hatch* v. *National Bank, 147 N. Y. 184, 191, 192; Nassau Bank* v. *National Bank of Newburgh, 159 N. Y. 456, 460.*

In *Thompson* v. *Clydesdale Bank, App. Cas. 282 (1893),* Lord Herschell says (at *p. 287*) : "It cannot, I think, be questioned that under ordinary circumstances a person, be he banker or other, who takes money from his debtor, in discharge of a debt, is not bound to inquire into the manner in which the person so paying the debt acquired the money with which he paid it." Lord Justice Bacon, in *Taylor* v. *Blakelock, 32 Ch. D. 560* (at *p. 570*), says, "that by the common law of England, payment of an existing debt has always been a payment for a valuable consideration, that the man who has a debt due to him, when he has been paid the debt, has converted the right to be paid into the actual possession of the money, and that in taking payment he relinquishes right for the fruition of the right; that in such a case the transaction is completed, and to invalidate that transaction would be to lull creditors into a false security

and to unsettle business." Certified checks, when used and accepted as money in payment of debts, must, upon the same grounds of public policy, be treated as payments of money and entitled to the same protection. *Nassau Bank* v. *Broadway Bank, 54 Barb. 236; Justh* v. *National Bank, supra.* And where, upon the payment of the debt, there is a transfer, satisfaction or release by the creditor of an interest in the lands held as security for the debt, he becomes in addition a purchaser for valuable consideration. This character of holder for valuable considera- tion has been extended to cases where property (other than money) held in trust by a trustee, or purchased by trust funds, has been transferred and accepted in satisfaction of a debt owing by the trustee, to persons to whom he was liable under another trust, and who had no notice of the misappropriation. *Taylor* v. *Blakelock, 32 Ch. D. 560 (1865)*, and cases cited. In the present case, before notice to Mr. Weeks of any fraud in connec- tion with Byram's obtaining the check, the receipt had been endorsed upon the mortgage with a direction for cancellation, and the mortgage had been delivered to Mr. Baker for the bene- fit of Mrs. Baker. Having surrendered and discharged her mortgage on the receipt of the check, without notice of any fraud, Mrs. Plaut was a holder for value of the check and entitled to the payment thereof, and to retain the money even if a certified check used for the payment of a debt be regarded not as money, but merely as negotiable paper.

These settled principles in relation to the receipt of money by a creditor in satisfaction of existing debts or obligations, are referred to and restated not because complainant's counsel dispute either their validity or effect so far as Mrs. Plaut is concerned, but because their application for the protection of either Mrs. Baker or Mr. Thompson is disputed, and for the further reason that in the view which I take of the whole case, the question upon the solution of which the decision of the case depends, is, whether the payment to Mrs. Plaut by Byram must not, by reason of the peculiar facts in the case, be considered also such a payment or discharge of an existing debt or obliga- tion owing by Byram to Mrs. Baker and Thompson, as entitles them to protection of the same character, if they also had no

notice of the fraud. It is important, therefore, in this view, to consider the basis of the legal rules which protect Mrs. Plaut in retaining the money paid to her. The special feature of the case is that the payment to Mrs. Plaut of her mortgage was the very duty or obligation which both Mrs. Baker and Thompson had previously contracted with Byram that he should perform, and for the performance of which each of them, in advance of the performance gave valuable consideration, Thompson by the mortgage to Mrs. Baker, and Mrs. Baker by advancing the money for the payment to Byram. Byram's failure to pay the whole of the mortgage at once, and his misappropriation of portion of the money, made him a debtor to Mrs. Baker for the misappropriation of her money, although he was such debtor without her knowledge. When Byram subsequently paid the Plaut mortgage, he discharged not only that mortgage, but also the duty or obligation to pay this mortgage which he contracted with Mrs. Baker upon valuable consideration previously received from her. That the payment by Byram was intended as a discharge of his obligation to Mrs. Baker sufficiently appears from his request to Mr. Weeks to cancel the Plaut mortgage and return it to Mr. Baker after cancellation, and as between Byram and Mrs. Baker, the debt or obligation due to her from Byram to pay the Plaut mortgage was discharged upon Mr. Weeks' receipt of the check as payment, and his endorsement of the mortgage as paid and for cancellation. And this discharge of his debt to Mrs. Baker, although without her knowledge when made, cannot affect, as between Byram and Mrs. Baker, the validity or effect of the payment as a discharge of the debt owing to Mrs. Baker, or the right of Mrs. Baker to treat it as a discharge. This was the rule applied in *Nassau Bank* v. *National Bank of Newburgh, 159 N. Y. 456 (1899)*.

In this case one T. obtained money from a bank upon a check forged by him, in the name of one of its depositors, and the payment was charged to the depositor's account as upon a genuine check. Afterward T., by forgery, procured from another bank its check, which he deposited in the first bank to the credit of the depositor, not of the bank, thereby replacing, through the medium of the depositor's account, the funds

stolen from the first bank, which was ignorant both of the original forgery and of the repayment.

Upon a suit brought by the second bank against the first it was held that the first bank was entitled to retain the check and the money thus procured from the second bank, because it was a payment of the debt in fact due to it, although without its knowledge, and that after this payment the debtor (being the forger) could not reclaim it, and that no interest in the moneys remained in him. The payment or discharge of Byram's previous debt or obligation to Mrs. Baker, having in fact occurred by Byram's payment of the Plaut mortgage, for the purpose of discharging the obligation to Mrs. Baker, as well as to Thompson, she is, as it seems to me, not only a creditor entitled to hold the benefit of payment as made in fact on her existing debt, but also a holder for valuable consideration.

The fact that this payment or discharge was made with money fraudulently or feloniously obtained from complainant cannot, as it seems to me, change or disturb the effect of the payment of the money in discharge of a debt, either as to Mrs. Plaut or as to Mrs. Baker, unless at the time of the payment, or at furthest, at the time of the receipt of the mortgage by Mr. Baker, he, or Mrs. Baker, through him, were charged with notice, actual or constructive, of the fraud of Byram. Actual notice of Byram's fraud in procuring the money from the complainant for the payment is claimed because at the time of the receipt of the mortgage from Mr. Weeks, Mr. Baker had, it is said, notice of Byram's misconduct and fraud. The information then received by Mr. Baker that the Plaut mortgage had just been paid by Mr. Byram, more than a year after he had received the money for that purpose, was notice of Byram's irregular dealing with their money, which might require explanation from him, but it cannot be considered as notice either to Mr. Weeks or to Mr. Baker of a fraud or crime of Byram in procuring the money for the payment from the bank. Nothing had occurred at the time of the payment to Mr. Weeks, or at the time of the delivery and receipt of the Plaut mortgage, to arouse any suspicion that the certified check had been procured by fraud or forgery, so as to put them upon inquiry of the bank. Nor

Fidelity Trust Co. *v.* Baker.

did the complainant itself at that time have any such knowledge. I find nothing in the case to charge Mr. Baker with actual notice of Byram's fraud in procuring the check, by reason of any facts which came to his knowledge, or as to which he was put upon inquiry. Constructive notice of Byram's fraud in procuring the money, is also claimed by reason of Byram being Mrs. Baker's solicitor, but this contention cannot prevail.

Byram was Mrs. Baker's solicitor or agent for the purpose of paying over to Mrs. Plaut, in satisfaction of her mortgage, the money furnished by Mrs. Baker, and was in no respect her solicitor or agent for the purpose of procuring money from other sources for that purpose. The payment made by Byram to Weeks was not of Mrs. Baker's money, as her solicitor, but was of money which was paid and received as his own money, and he paid this money not as Mrs. Baker's solicitor, but for himself to discharge his debt to her. Constructive notice to her through her solicitor can only extend to information received by Byram in the course of the transaction in which she employed him as her solicitor, which information the law presumes that the solicitor in the course of the business communicated to his client.

It would, as it seems to me, be an unauthorized and unjust extension of the rule in question to charge Mrs. Baker, merely by reason of the employment of a solicitor to pay over her money for a special purpose, with constructive knowledge that the solicitor subsequently misappropriated her money and afterwards fraudulently procured money from others to pay his debt to her. That Byram intended to repay the money secretly and without her knowledge sufficiently appears from his request to Mr. Weeks to cancel the mortgage and then send it to Mr. Baker.

Upon the whole case, therefore, I conclude that Mrs. Baker and Thompson, not having any notice, actual or constructive, of Byram's fraud in procuring the certified check from complainant, are entitled to the benefit of the payment of the check as money in discharge of the Plaut mortgage, upon two grounds—*first,* that it was a payment of money made by Byram in discharge of an existing debt owing by Byram to them, and a payment of money which neither Byram nor the complainant,

12

from whom the money was fraudulently procured, can rescind nor revoke; and *second,* that this payment of the mortgage being made by Byram upon the consideration of money previously advanced to Byram expressly for that purpose by Mrs. Baker, on Thompson's mortgage, they are holders for valuable consideration of the premises released from the Plaut mortgage, and this mortgage cannot be reinstated as a prior subsisting mortgage to their detriment.

Other questions were raised in the cause, one as to the negligence of the complainant in allowing Byram's account to be credited with the amount of the forged check without inquiry as to the truth of his statements, and another as to the negligence of Mrs. Baker and Thompson in not employing different solicitors, and in their subsequent conduct in failing to see that the Plaut mortgage was paid and canceled of record.

I find that neither of these claims have been established as matters of fact, and that the negligence of either party, in the respect charged, is wholly irrelevant to the present case. The complainant's case is based on its equitable right to follow its money procured by fraud and crime, and its negligence or carelessness in parting with its money could not deprive it of its title to the money, or give title to the money to the frauddoer or to a recipient who did not receive it innocently for a valuable consideration, or as money received in payment of an existing debt. And on the other hand, defendants' case is based on their right to retain and hold the benefit of a payment made for their benefit and in discharge of a duty owing to them, and their negligence in relying upon Byram, if any existed, was not in any legal sense the cause of complainant's loss. Nor was the complainant's act which was the direct cause of its present loss, viz., the certification of Byram's check, induced by any reliance on any act or omission of the defendants. The case presented is simply one where both complainant and defendants have been defrauded by Byram, a trusted attorney, who has fraudulently obtained money from the complainant, a part of which he has used to repay and restore a previous misappropriation of defendants' money.

The bill will be dismissed, with costs.