MARTIN LARSON v. E. W. BUTLER and George W. Swords, Co-
partners as Butler & Swords.

(144 N. W. 1077.)

**Appeal — judgment — commission notes — consideration — agency — loans
—payment.**

Defendants appeal from a judgment canceling commission notes and commis-
sion mortgage for failure of consideration. Testimony reviewed, and it is
*held:*

The intermediary, one Dahl, who acted in the loan negotiations, was not
plaintiff's agent in procuring his loan of defendants; defendants were not
authorized to make payment to Dahl, who embezzled the proceeds of the loan,
and to whom Butler & Swords had made full payment.

Opinion filed December 29, 1913.

An appeal from a judgment of the District Court of Ward County,
*Leighton,* J.

Affirmed.

*E. R. Sinkler,* for appellants.

Dahl was Larson's agent, and had the right to receive payment, and
his acts were ratified. If an act is wrong, he who consents to it is not
wronged by it. Rev. Codes 1905, § 6662.

Acquiescence in error takes away the right of objecting to it. Rev.
Codes 1905, § 6663.

One who can, but does not, forbid an act in his behalf, is deemed to
have bidden it. Rev. Codes 1905, § 6666.

One who has knowledge of payment being made, or about to be made,
in his behalf, and makes no objection, and the position and rights of
others are changed by such acts, is estopped to make any claim as against
other interested parties. 16 Cyc. 742; Clark v. McGraw, 14 Mich.
139.

The borrower's agent to make loan is his agent also to receive the
money from the lender. National Mortg. & Debenture Co. v. Lash,
5 Kan. App. 633, 47 Pac. 548; Murphy v. Becker, 101 Minn. 329,
112 N. W. 264; Land Mortg. Invest. & Agency Co. v. Vinson, 105
Ala. 389, 17 So. 23; Edinburgh American Land Mortg. Co. v. Peoples,

102 Ala. 241, 14 So. 656; Florida C. & P. R. Co. v. Ragan, 104 Ga. 353, 30 S. E. 745.

Payment to an authorized agent is equivalent to payment to the creditor himself. Bicknell v. Buck, 58 Ind. 354; Indiana Trust Co. v. International Bldg. & L. Asso. 165 Ind. 597, 76 N. E. 304; Gavigan v. Evans, 45 Mich. 597, 8 N. W. 545.

An agent authorized to receive payment on a mortgage may bind his principal though payments made to him are not indorsed. Ellis v. Maurer, 125 Mich. 400, 84 N. W. 1114.

Money paid on a note which has reached the hands of an agent authorized to collect for the holder constitutes satisfaction of the debt. John Stuart & Co. v. Stonebraker, 63 Neb. 554, 88 N. W. 653; Pochin v. Knoebel, 63 Neb. 768, 89 N. W. 264; Boyd v. Pape, 2 Neb. (Unof.) 859, 90 N. W. 646.

One cannot make a claim, or speak when he wishes to do so, when he ought to have spoken before, but remained silent. Rev. Codes 1905, §§ 6662, 6663, 6666.

If a principal fails to disavow promptly an unauthorized act, he will be deemed to have ratified it. Clay v. Spratt, 7 Bush, 334.

When a principal is informed of what has been done, he must dissent and give notice within a reasonable time, or he will be presumed to have ratified the action. 2 Kent, Com. 616; 1 Am. & Eng. Enc. Law, 1203, and cases cited.

*Dorr H. Carroll,* for respondent.

Much weight must be given to the findings of fact by the trial court, who has had opportunity to see and observe the witnesses upon the stand. Pillsbury v. J. B. Streeter, Jr. Co. 15 N. D. 174, 107 N. W. 40; James River Nat. Bank v. Weber, 19 N. D. 702, 124 N. W. 952; Ruettell v. Greenwich Ins. Co. 16 N. D. 546, 113 N. W. 1029; Dowagiac Mfg. Co. v. Hellekson, 13 N. D. 257, 100 N. W. 717; First Nat. Bank v. McCarthy, 18 S. D. 218, 100 N. W. 14.

An agent cannot act for two parties when their interests are adverse. New York Central Ins. Co. v. National Protection Ins. Co. 20 Barb. 468; Price v. Keyes, 62 N. Y. 378; Levy v. Loeb, 85 N. Y. 365; Meyer v. Hanchett, 39 Wis. 419; Walworth County Bank v. Farmers' Loan & T. Co. 16 Wis. 629; Walker v. Osgood, 98 Mass. 348, 93 Am. Dec. 168; Mercantile Mut. Ins. Co. v. Hope Ins. Co. 8 Mo. App. 408;

Bollman v. Loomis, 41 Conn. 581; Fitzsimmons v. Southern Exp. Co. 40 Ga. 330, 2 Am. Rep. 577.

Goss, J.   Plaintiff brings this action in equity to quiet title against certain mortgages held by the defendants M. L. Davenport and Butler & Swords, who by answer respectively aver the ownership of an $870 first mortgage in Davenport, and an $87 commission mortgage in Butler & Swords.   On trial it was stipulated that the mortgages in question were executed by the plaintiff and wife to Butler & Swords, a copartnership consisting of E. W. Butler and G. W. Swords, securing promissory notes of $870 and $87, respectively, dated April 12, 1909, and duly recorded; and that the principal mortgage of $870 had been assigned to defendant Davenport, who took the same as a purchaser in good faith and without notice of any defect in title or consideration, or of any of the facts hereinafter recited concerned in the negotiations between plaintiff and Butler & Swords.   Defendants Davenport, Due, and the Carpio State Bank, so far as the trial was concerned, were eliminated as parties, and the action proceeded against Butler & Swords in whose name the second mortgage stood of record, and which mortgage was canceled by the trial court for failure of consideration of the note secured thereby.   These defendants appeal and demand a trial *de novo.*

The question involved is a mixed one of law and fact, and depends principally upon whose agent was one O. G. Dahl, an intermediary, through whom the loan was negotiated with defendants Butler & Swords, and who embezzled the proceeds from the loan received from them. It is apparent that both the plaintiff and these defendants, in dealing with each other and with Dahl, have exercised the utmost of good faith, plaintiff supposing Dahl to be a loan broker with connections with Butler & Swords, who in turn supposed Dahl was fully authorized to act for plaintiff, as his actions had led them to believe, and that they, when dealing with Dahl, were dealing with the plaintiff, as he was not their agent in securing and negotiating loans generally, but instead acted in this instance on his own initiative.

Plaintiff negotiated with Dahl and gave him the usual application for loan, taken on the printed applications of Butler & Swords, which was evidently submitted to them and approved.   In the application

is an appointment of Butler & Swords as the agents of the applicant in procuring a loan for him, and authorizing them to procure abstract of title, record mortgages, and satisfy prior encumbrances on the land to be mortgaged. After approval of the application plaintiff and his wife appeared before Dahl and signed the mortgages and notes in question, and left them with Dahl, who plaintiff testified was "the one that drew them up, I suppose," who evidently transmitted them to the mortgagee partnership. Plaintiff Larson's purpose in mortgaging his farm, apparently known to all parties, was that he might procure the cash to use in attending a sale of school lands a day or two after April 20th, on which date mentioned Swords had wired Butler, in Chicago, to forward to O. G. Dahl, of Carpio, "$870, Larson loan, at once without fail," in compliance with which a draft for that amount, dated April 20, 1907, was sent to O. G. Dahl, which was cashed May 3d following by the bank on which it was drawn, and which draft purports to bear the indorsement of Dahl. This telegram was sent pursuant to Dahl's telephonic request therefor, and it appears was with the knowledge of Larson so far as the procuring of the money was concerned, but who testifies he expected the draft to come to him or in his name. The day of the sale arrived, and both Dahl and Larson appeared in Minot, and both called at the office of Butler & Swords, whether together or separately is in conflict, the plaintiff denying that he was with Dahl at Sword's office or at the sale, while the recollection of Swords is that they were together, which is probably the fact. Plaintiff admits that he came to Minot with Dahl for the purpose of attending the sale, and with the intention of using the loan money to buy land if he had gotten it; and that Dahl had told him that "my security was all right and my money would be here if I needed it." And again, "He (Dahl) said it was not here that morning, but that it would be here before night." Swords testifies that it was his understanding from conversing with Dahl and Larson, that Dahl had received a telegram from Butler that the money was on the way, and that Dahl had made arrangements with the Carpio bank "that they were to telephone down or send down the draft" if it came during the day of the sale; and relying on such arrangement Swords informed the county treasurer of the facts, and to accept Larson's bid for school lands, as he, Swords, "would see that the money was there; that the money was

on the road already." It appears from Larson's testimony that he was fully cognizant of this arrangement, and that the reason he did not bid at the auction sale was because the land sold at too high prices. Plaintiff and Dahl returned home without buying land, and without the money, Larson evidently relying on getting it from Dahl when it should come, and a week later went to Carpio admittedly to get his money of Dahl, who was not to be located. Plaintiff then repeatedly visited Dahl's office to get his money, seeing him, but being told by Dahl that he had not received the money, and that there were some errors in the papers, and that "he (Dahl) would come down to Butler & Swords and get the money or the papers," to which plaintiff did not object, and matters remained in the same condition until July 13th, when plaintiff wrote the following letter to Butler & Swords: "On or about April 22d I made a loan through O. G. Dahl, of Carpio, North Dakota, and gave over good papers as security, and up to date Mr. Dahl has made me various excuses in not turning over the money to me. What I would like to know, if said party made a loan of you, did he receive the money? He claims that you are holding back the money. If you will kindly give me any information in regard to this inquiry, I would consider the same a favor. Awaiting an early reply," etc. Soon after this plaintiff learned the truth, that from his testimony he had evidently begun to surmise, that Dahl had received and embezzled the proceeds of the loan. However, on July 19th, following, plaintiff received from Coon Valley, Wisconsin, a letter from Dahl, stating: "I am getting the loan straightened out nicely, and expect to send you draft for $870 the last of next week." Matters remained in this condition until this suit was brought in October following. It seems that Dahl attempted to settle his defalcation by giving security or deeds to lands, which, however, the plaintiff would not accept, but which were by plaintiff tendered to defendant mortgagee, who likewise refused to consider any security from Dahl in the matter, claiming that their payment to Dahl was a payment to plaintiff. What pecuniary interest the parties contemplated Dahl would have had in the transaction, or from what source or from whom he would have received his compensation, but for his embezzlement, does not appear. The details of the transaction had by Butler & Swords with Dahl, other than those above related, were had with Butler, who has not testified, and this fact is more or less

significant, inasmuch as had he testified we might know how this loan came to be made with them, and know whether Butler was paying Dahl a commission for procuring it. Swords testified that he did not know how Dahl came to be doing business with Butler & Swords; that he never knew of the preliminary negotiations. "The first I knew was when they asked for the money, and the next I knew was the arrangements for the school lands."

Q. This mortgage then just came in unsolicited?
A. I could not tell you anything about it.

It was well said in Merriam v. Haas, 154 U. S. 542, and 18 L. ed. 29, 14 Sup. Ct. Rep. 1159, that to determine in a given case whether a person is the agent of the lender or of the borrower is a question of the weight of testimony rather than of the application of legal principles. Again, the principle is restated in 31 Cyc. 1222 et seq., that "in the negotiation of loans it is often difficult to determine whether an intermediary is the agent of the borrower or of the lender. Each case must be decided upon its own particular circumstances. If a person desiring a loan makes known that desire to one who applies to a money lender and consummates the loan, the intermediary is the agent of the borrower, not of the lender. So, if the borrower, in a written application or otherwise, expressly makes the intermediary his agent, if he pays the agent's commission for negotiating the loan, or if he employs the intermediary to examine the title to the property offered as security, or to discharge prior encumbrances thereon, these facts taken collectively or in various lesser combinations justify an inference that the intermediary is the agent of the borrower. On the other hand, if a money lender employs the intermediary to negotiate loans, to examine the title to property offered as security, to see that the property is discharged from prior encumbrances, to prepare the papers and see to the execution thereof, to pay over the money to the borrower, or to perform other services in regard to the loan, these facts taken collectively or in various lesser combinations justify an inference that the intermediary is the agent of the lender. If the lender pays the intermediary's commission, it tends to establish an agency in the lender's behalf, and if the service is performed at the request and by the direction of the

lender, presumptively the agent is his agent, even though the borrower is required to pay for the service. However, none of the foregoing facts is conclusive on the question of agency, and will not preclude the alleged principal from showing that the intermediary was actually acting as the agent of the other party, or as agent of each, but for different purposes. And the fact that the application for the loan recites that the intermediary is the agent of the borrower is not controlling if the facts and circumstances are such as to create an agency in behalf of the lender as a matter of law." Several pages of citations sustain this text.

We conclude that it sufficiently appears that Larson did not employ Dahl as his agent, but instead dealt with him supposing him to be either a money lender or an agent for the defendants. He says the application for loan was read to him, and he must have then understood from his understanding of the transactions· that he was dealing with Butler & Swords through Dahl as their agent. And so viewed this harmonizes entirely his subsequent actions in going with him to Minot to procure the money to use at the sale. Nothing would be more natural on his part than that he would accept assistance from Dahl, supposing that Dahl could render him assistance with Dahl's principals, the mortgagees. Larson naturally concluded that when Butler was sending the draft or money to Dahl he was placing it in the hands of Butler's agent; hence Larson had nothing to worry about. And, likewise, his expectation that he would at some time receive the money from Dahl was but a natural one, not tending to estop him from relying upon the defendant mortgagee for final payment either direct to him or through Dahl, their supposed agent for payment. And from this standpoint his courteous letter of July 13th was nothing more than calling to the attention of the mortgagee the fact that he had not received the money from their supposed agent.

On the contrary, the defendants contend they dealt with Dahl assuming him to be the agent of the mortgagor, plaintiff; and that when Dahl instructed them to forward the draft to him at Carpio in payment of the mortgage loan, Dahl had either express authority from his principal to so direct and to receive the money, or that such order was one reasonably to be inferred as within Dahl's implied powers as agent, and within the ostensible scope of such assumed express or implied agency;

further, that the acts of Dahl and plaintiff, occurring on the day of sale and afterward, either ratified and sanctioned the manner of sending the money, or created by estoppel a relation of principal and agent between Larson and Dahl.

While the former contention of the plaintiff is in harmony with the facts, that of the defendants is defective in two particulars: (1) in the assumption that Dahl was the agent of the mortgagor in the absence of any proof of actual agency, or of the holding out by plaintiff of Dahl as his agent in the matter; and (2) the payment to Dahl of the mortgage proceeds upon a mere presumption of agency unsupported by facts amounting to a holding out or proof of an ostensible agency or of an actual agency. At this point the defendants by law were charged with knowledge of the powers of the agent, as there had been no ostensible agency shown to exist, and acted at their peril when paying him the proceeds of this mortgage. It would seem that reasonable precaution should have dictated either that the proceeds be sent to the mortgagor, or at least that the draft be drawn in the name of the mortgagor. In doing otherwise they were relying upon the statements either of their own agent or that of a third person, with whom, in the latter instance, they must act at their peril. The events of the Minot trip are important only as bearing upon the relations of the parties. They might have significance if the record established that Larson knew the draft sent was drawn to Dahl, and further proof that in so doing defendants supposed they were dealing with Dahl under the assumption known to Larson that Dahl was supposed to be Larson's agent in receiving such money. But of these two essentials there is no proof; the defense is based upon assumptions instead of upon facts. It is a hardship that they should forfeit their security and likewise their debt under these circumstances, but it would be equally unjust to compel the mortgagor to pay something for which he has received no consideration, and in law the mortgagee under these circumstances, for retribution, must look to the party whom he has under error of fact enriched through his own negligence. In the final analysis both the facts and law seem plain and conclusive.

The judgment of the trial court is therefore affirmed.