This is a bill to foreclose a mortgage dated November 26th, 1928, with interest. Defendants have answered and filed a counter-claim, alleging improper execution of the mortgage and lack of consideration.
The defendant Walsh started the erection of a building, and while in the office of one George W. Perry, a lawyer of Orange, on another matter, was asked if he would like to have him (Perry) place a mortgage on the property. Walsh said that he had made arrangements to obtain a loan from a bank but he finally consented to take the money from one of Perry's clients. On November 26th complainant gave Perry four cashier's checks made out to complainant and endorsed by complainant in blank, which checks totalled $4,000. It is admitted that Walsh never received the $4,000 or any part of it. Perry's pass-book shows that on November 26th, the day on which complainant gave him the $4,000, he deposited to his personal account the sum of $5,300. There are no other documentary records. Perry is dead. *Page 397 
Walsh signed the bond and mortgage. There is some question as to whether they were properly acknowledged by himself and his wife, but I do not think it is important to decide this question for reasons which I will later explain. He said, however, to Perry that he wanted all his money or not any; that he would pay no interest until the money was forthcoming, and that he wanted the money when the building was completed. Between November 26th, 1928, and the February ensuing, when Perry died, he often asked for his money.
In the first place, it is apparent that Perry diverted this $4,000 to his own use. Therefore, the question arises as to whose money Perry stole. Wilson gave the money to Perry. It seems to me that the case of Fountain v. Carlton, 88 N.J. Eq. 593, is in point. Complainants in that case employed a lawyer named Kehoe to foreclose a mortgage. After the decree was entered, the owners of the equity of redemption sold the premises to a Mr. Bullis. Bullis was to have a clear title and he also employed Kehoe to look after his interests. After paying the vendor the difference between the purchase price and the liens, Bullis entrusted Kehoe with $5,000 to pay off the liens. Kehoe failed to pay complainants. The court of chancery, which was affirmed on the opinion below, speaking through Vice-Chancellor Backes, said:
"* * * and the question is: `Is Bullis or are the complainants to lose this amount of the theft? Was it Bullis' money or the complainants' that Kehoe stole?' It seems to me that it must be held that the thief stole the money when and as it was given to him — that is, Bullis' money. I cannot suppose, and there is nothing in the case to indicate, that Kehoe first applied the sum to the complainants' debt and then stole it."
It seems to me, in this case, that the theft took place when the money was given to Perry by Wilson, as it was never paid to Walsh but deposited in Perry's personal account.
Moreover, it is a well-known principle of law that when one of two innocent persons must suffer a loss, it is to be borne by the one who first rendered the injury possible. See "Estoppel"10 R.C.L. 695 § 23. *Page 398 
The case of Larson v. Butler (N.D.),144 N.W. Rep. 1077, was one in which both the owners and the mortgagees supposed the broker was authorized to act for the other. The owners executed the mortgage and then delivered it to the broker. He in turn delivered it to the mortgagees. The mortgagees made out a draft payable to the agent. The court held that the mortgagees were charged with knowledge of the powers of the agent as there had been no ostensible agency shown to exist, and acted at their peril when paying the broker the proceeds of the mortgage, saying (at p. 1079):
"* * * It would seem that reasonable precaution should have dictated either that the proceeds be sent to the mortgagor or at least that the draft be drawn in the name of the mortgagor. In doing otherwise they were relying upon the statements either of their own agent, or that of a third person, with whom, in the latter instance, they must act at their peril. * * *"
In the case at bar it was Wilson who first made the theft possible. Had he made his checks payable to the defendant Walsh, instead of endorsing them in blank and delivering them to Perry, there could have been no embezzlement. His action enabled Perry to divert the funds. I feel, therefore, for the two reasons above set forth, that the bill to foreclose this mortgage should be dismissed. I will advise a decree accordingly. *Page 399