This suit is before the court on exceptions to report of a master to whom was referred the questions of the amounts due on two mortgages, one to complainant and the other to defendant Carteret Bank and Trust Company, and their priority. The real question is as to who shall bear the loss *Page 517 
incurred by reason of a series of fraudulent transactions of one Rodenberger.
In March, 1939, defendant George Mack was building a house for sale at New Milford and approached Mortgage Service Bureau, Inc., which was operated by Rodenberger, to secure a construction loan. Rodenberger arranged a loan from complainant Zabriskie. Mack and his wife executed a mortgage March 21st, 1939, to Zabriskie in the sum of $2,160 which was recorded April 4th, 1939. It was to secure future advances under the following provision:
"This is an advance money mortgage and is given to secure whatever amount of indebtedness may at any time hereafter become due from the said George Mack and Teresa Mack, his wife, to Peter L. Zabriskie. Interest on this mortgage to be computed at the rate of six per centum per annum from and after the date of each advance."
On March 24th, Rodenberger showed it to Zabriskie, who thereupon signed a check for $2,160 which was drawn by Rodenberger to the order of Harold E. Smith, attorney, who was a salaried employee of the Mortgage Bureau. Rodenberger secured the endorsement in blank by Smith and cashed the check the same day. What he did with the proceeds does not appear exactly. At any rate, none of the proceeds of this check was paid to Mack. It was shown before the master that on the same day $1,980 was deposited in the First National Bank of Paterson in the account of the Mortgage Bureau. Overdraft checks in the amount of $410 were already outstanding against the account. The balance created by the deposit was soon exhausted by payments to others than Mack before he received anything on his mortgage. In other words, the Mortgage Bureau had converted to its own use all the money entrusted to it by Zabriskie to be advanced to Mack. The master found, and all the evidence confirmed it, that on this transaction the Mortgage Bureau was the agent for Zabriskie and not for Mack. If this were the entire situation, the Mack mortgage would be void for lack of consideration, Zabriskie being liable for the embezzlement from him by his agent. In Miller v.Schielke, 105 N.J. Eq. 337, the mortgagee delivered a check to one Comp to be delivered to the mortgagor. The mortgage was canceled. The court stated: *Page 518 
"It is obvious that both mortgagors and mortgagee are innocent dupes of Comp. One or the other must suffer loss as the result of Comp's rascality. It seems equally clear, upon consideration of the facts, that the loss in this instance must fall on the mortgagee. Comp was Schielke's agent; the latter entrusted him with $3,500. Comp embezzled the sum of $3,500 immediately upon receipt thereof. The mortgagors executed and delivered to the mortgagee the bond and mortgage relying on his promise to pay $3,500 for their use and benefit, to the holders of the existing mortgages in satisfaction thereof. The mortgagee did not do this nor did he in any other wise give any consideration for the bond and mortgage. There is a complete failure or want of consideration, and the complainant is therefore entitled to the surrender and cancellation of the mortgage."
In Wilson v. Walsh, 105 N.J. Eq. 396, under similar circumstances, the court said:
"Moreover, it is a well known principle of law that when one of two innocent persons must suffer a loss, it is to be borne by the one who first rendered the injury possible."
The same principle is found in Fountain v. Carlton, 88 N.J. Eq. 593.
But in the instant suit, two subsequent transactions took place which may affect the rights of the parties. On April 1st, 1939, defendant bank, in connection with other matters which were not explained but which had nothing to do with the Mack mortgage or the Smith mortgage later placed by it on the same premises, turned over to the Mortgage Bureau two checks, aggregating some $7,100, which were deposited in the same bank account, there being no intervening deposit. Subsequently, and on April 12th, 1939, the Mortgage Bureau paid Mack $432, and again on May 6th, paid him $548, both paid by check drawn on this account. These aggregated $1,080 and were the only sums he received as advances under his mortgage. The Mack mortgage, therefore, became a valid lien in favor of Zabriskie to the extent of this sum and no more. The master found, however, that there was due to Zabriskie the limit named in the mortgage, *Page 519 
namely the sum of $2,160, but this finding was erroneous and the exception thereto must be sustained.
Under the principles set forth in the cases cited, Mack was chargeable only with the sums which actually reached him from or on behalf of the mortgagee.
The defendant bank contends that the Mack mortgage is void intoto on the ground that the funds entrusted to the Mortgage Bureau by Zabriskie were all misappropriated before any advance was made to Mack, and that the later advances were made out of funds embezzled from the $7,100 turned over to the Mortgage Bureau by the bank. If, after misappropriating all or a portion of the trust funds obtained from Zabriskie, the Mortgage Bureau had made good out of money legitimately its own, although the transaction would have been highly improper, the status of the mortgagor and mortgagee would not be affected as to the amounts actually paid to the mortgagor, since, to the extent of such payment, the mortgagee had provided funds for the loan and the mortgagor had received the loan. Surely, the mortgagor could not deny the validity of the mortgage of which he had received the benefit. The question raised by the contention that payment was made to Mack out of funds embezzled from the bank need not be considered since there is no evidence to sustain the alleged fact.
The next question involved here is as to the rights of the defendants Donald R. Smith and his wife, who bought the premises from Mack for $3,990, paying $390 immediately. On May 23d 1939, they executed a mortgage to the bank in the amount of $3,600. Again the Mortgage Bureau appears in the transaction and again it misappropriated funds. The master found that, in connection with this mortgage, the Mortgage Bureau, through its attorney, Harold E. Smith, participated as agent for the Carteret Bank, and that it was the intent of the parties to the mortgage that all prior liens, including the Zabriskie claim, should be paid out of the proceeds of the mortgage. Both of these findings are sustained by the evidence. Harold E. Smith testified that he did not know for whom he was acting, while no witnesses appeared from the bank; but Smith said he had previously made *Page 520 
numerous searches for the bank, and the two checks making up the amount of the mortgage loan were made by the bank, jointly, to him and other mortgagors, with the obvious purpose of protecting the disposition of the proceeds, although in fact it did not do so. The two checks were deposited in the account of the Mortgage Bureau in the names of all three payees written thereon as endorsers in blank. It was stipulated before the master by the bank and the Donald Smiths that neither Donald nor Carolyn Smith ever received the checks or endorsed them, that they never authorized anyone to endorse them or handled the proceeds. The Mortgage Bureau retained for itself the amount of $1,080 advanced to Mack under the Zabriskie mortgage, apparently under the pretense that it was paying it off, and the balance went to Mack, who paid, or arranged to pay, some mechanics' liens against the property. That it was clearly the intention of the parties that all liens should be paid out of the proceeds of the mortgage is shown by the fact that the down payment and the mortgage aggregate the total price and no provision was made for any deduction because of the continuance of any lien. That the liens, including the Zabriskie mortgage, were to be paid, is further indicated by the fact that Harold E. Smith did not mention the Zabriskie mortgage in the search and certificate he submitted to the bank, and the further fact that he caused the Donald Smiths to execute an affidavit of title stating the property was free and clear. As between the bank and the Donald Smiths, the bank is in the same position as is Zabriskie as against Mack, since in each instance the mortgagee entrusted mortgage funds to an agent so that the entire amount did not reach the mortgagor.
As a result, the Zabriskie mortgage is good as a first lien against all the defendants to the extent of the $1,080 which was received by Mack, and the Donald Smiths are entitled to a credit on their mortgage at the bank in the same amount. The exceptions to the master's report will be sustained to the extent indicated, and as so modified the report will be confirmed, and a decree advised in accordance with this opinion. *Page 521