257 N.J. Super. 33 (1992)
607 A.2d 1327
SEARS MORTGAGE CORPORATION, PLAINTIFF-RESPONDENT CROSS-APPELLANT,
v.
MICHAEL ROSE AND EMERY KAISER, DEFENDANTS-THIRD-PARTY PLAINTIFFS-RESPONDENTS
v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY, THIRD-PARTY DEFENDANT-APPELLANT, AND JOSEPH F. GILLEN, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1992.
Decided June 5, 1992.
*35 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
Ben J. Slavitt argued the cause for appellant Commonwealth Land Title Insurance Company (Slavitt, Fish & Cowen, attorneys, Ben J. Slavitt and Ronald G. Schecter, on the brief and reply brief).
Elizabeth J. Sher argued the cause for cross-appellant Sears Mortgage Corporation (Pitney, Hardin, Kipp & Szuch, attorneys, *36 Elizabeth J. Sher and Mary Anne Broderick, on the brief).
Richard M. Fricke argued the cause for respondent Michael Rose (Daniels & Solomon, attorneys, Richard M. Fricke, on the brief).
Peter D. Ciancia argued the cause for respondent Emery Kaiser.
Daniel R. Hendi, Deputy Counsel, filed an amicus curiae brief on behalf of the New Jersey Lawyers' Fund for Client Protection.
John R. Weigel filed an amicus curiae brief on behalf of the New Jersey Land Title Association.
The opinion of the court was delivered by SHEBELL, J.A.D.
In this case we address the question of the liability of a title insurance company for the theft by a purchaser's attorney of the monies intended to be used for satisfaction of an outstanding mortgage on the premises being purchased where the title policy commitment expressly imposes as a requirement of fee-title coverage that the outstanding mortgage be paid and canceled of record and where no closing-protection letter has been issued by the title insurance company.
On September 13, 1985, Michael Rose purchased a residential condominium unit located in Leonia, New Jersey. On the same day, Rose mortgaged the premises to the extent of $107,950 to Allstate Enterprises Mortgage Corporation (now known as Sears Mortgage Corporation or Sears).
On August 3, 1987, Rose entered into a contract to sell the premises to defendant third-party plaintiff, Emery Kaiser, for a purchase price of $165,000. Kaiser retained Joseph F. Gillen, Esq. to represent him in the purchase of the premises. At the time Kaiser had retained Gillen, and at the time of closing, *37 Gillen was a duly-licensed attorney-at-law of the State of New Jersey, with extensive experience in real estate.
The "Rose to Kaiser" contract of sale did not contain a mortgage contingency clause because Kaiser did not require mortgage financing for the transaction and the closing took place without Kaiser using any mortgage financing. Gillen applied in writing to Commonwealth Land Title Insurance Company (Commonwealth) for a title commitment for his client, Kaiser. The application designated Kaiser as purchaser and requested a fee policy in the amount of $165,000 insuring Kaiser's ownership in the property.
Commonwealth issued its title commitment letter, dated August 2, 1987. The title commitment referred to "Applicant: Joseph F. Gillen, Esq.," and named Emery Kaiser as proposed fee insured. Commonwealth mailed the title commitment to Gillen as Kaiser's attorney. The Sears mortgage was one of several requirements contained in that document:
Requirements
The Following Requirements must be met:
....
(D) Mortgages:
Mortgage Book 6902 page 493 made by Michael Rose, unmarried, to Allstate Enterprises Mortgage Corporation, 300 Knightsbridge Parkway, # 500 Lincolnshire, Illinois 60069, dated 9/13/85, recorded 9/24/85. Secures $107,950.00. To be paid and cancelled of record. [Emphasis added].
Commonwealth's title commitment was issued and signed by an assistant vice president of Commonwealth.
Before the closing on the property, Commonwealth mailed its invoice, dated September 15, 1987, for Kaiser's title commitment charges and insurance premium, again addressed to "Joseph F. Gillen, Esq." as Kaiser's attorney. Also in advance of closing, a judgment search was forwarded to "Joseph F. Gillen, Esq." under a cover letter signed by the assistant vice president of "Commonwealth Land Title Insurance Company."
*38 In advance of closing, Gillen wrote for and obtained a payoff statement on the Sears mortgage from Sears. The "Rose to Kaiser" closing took place on October 16, 1987 at Gillen's law office in Ridgewood. Present at the closing were Richard M. Fricke, Esq. (attorney for Rose), Kaiser, and Gillen.
In accordance with the customary real-estate-closing practice in northern New Jersey, Gillen did not request that a Commonwealth closing agent be present (although he could have had he paid a rate-approved fee). Because Kaiser had not specifically instructed Gillen to use Commonwealth as title insurer, he was unaware that Gillen had selected Commonwealth to insure title until the closing day. At no time prior to or at closing had Kaiser directly communicated with any representatives of Commonwealth. The first direct communication between Commonwealth and Kaiser was a letter to Kaiser dated December 1, 1987, from Commonwealth's vice president and counsel referring to the fact that the Sears mortgage remained open of record.
On the morning of October 16, 1987, a closing of title had taken place at which Kaiser sold the house in which he had been living, took back a one-year $140,000 purchase-money mortgage from the purchasers, and received a net-proceeds check for approximately $127,000. Kaiser endorsed that $127,000 check to Gillen. Neither Commonwealth, Rose, nor Rose's attorney, Fricke, was involved in the morning closing. The amount that Kaiser had delivered to Gillen from the morning house closing was more than sufficient to cover the outstanding balance of the Sears mortgage.
At the October 16, 1987 "Rose to Kaiser" closing, Kaiser was given a credit against the purchase price in the amount of the outstanding balance on the Sears mortgage. Fricke (Rose's attorney), Kaiser, and Gillen agreed that Gillen would promptly pay and satisfy the Sears mortgage so that Kaiser's title would be good and marketable as provided for in the contract of sale. Gillen, however, did not forward any funds to Sears. Instead, *39 Gillen misappropriated those funds. He was later criminally convicted and disbarred.
On October 20, 1987, Gillen paid Commonwealth's invoice of $704.25 for title charges and premiums. At the time of that payment, Gillen had requested that Commonwealth issue its fee-title-insurance policy to Kaiser, free of the Sears mortgage exception. The Sears mortgage remains open and unpaid at this time. Payments were not made on the Sears mortgage, and it became in default causing Sears to institute a foreclosure action.
Commonwealth offered to issue to Kaiser an owner's title policy subject to an exception as to the Sears mortgage. Kaiser, however, insisted that Commonwealth issue a title policy to him free of that exception. Commonwealth contended that it had no obligation to do so because the title commitment expressly conditioned the issuance of a title policy free of the Sears mortgage on payment and cancellation of that mortgage.
Kaiser sought redress from the New Jersey Lawyers' Fund for Client Protection (Fund). The Fund advised Kaiser that because he, in the Fund's opinion, had recourse against Commonwealth, he was barred from Fund indemnification under the "collateral source doctrine" set forth in R. 1:28-3(b)(5).
Sears filed a foreclosure complaint in the Chancery Division on April 14, 1988 to foreclose on the property. Kaiser answered and filed a third-party complaint naming Commonwealth and Gillen as third-party defendants. Defendant, Rose, from whom Kaiser purchased the unit, filed an answer and third-party complaint against Gillen and Commonwealth. Commonwealth filed its answer to Rose's third-party complaint and cross-claimed against Gillen and Rose. Commonwealth also filed an answer and cross-claim in response to Kaiser's third-party complaint. Commonwealth then moved for summary judgment to dismiss Kaiser's third-party complaint. Its motion was denied. Both the New Jersey Land Title Association and the Fund were permitted to participate at trial as amicus curiae.
*40 After a plenary trial, the trial court issued its initial written opinion on May 25, 1990. The trial court found Commonwealth liable to Rose and Kaiser for breach of a duty of good faith, fair dealing, and full disclosure. The court further stated that if an agency relationship was required as a secondary basis for liability, Gillen was Commonwealth's agent vis-a-vis Kaiser, and that Commonwealth was liable to Kaiser under "agency law" for Gillen's misconduct. By letter decisions, the trial court found Commonwealth liable for Rose and Kaiser's counsel fees under R. 4:42-9(a)(6).
The final judgment dated November 26, 1990 provides in part as follows:
A. Judgment in favor of the plaintiff, Sears Mortgage Corporation, in the amount of $140,462.87 (representing the outstanding mortgage balance), together with interest at the contract rate of 12% per annum on the $108,312.88 principal indebtedness from March 1, 1990 to the date of the final judgment ($11,770), together with lawful interest thereafter, together with costs of suit taxed at the amount of $1,938.20.[1]
B. Judgment in favor of third-party plaintiffs, Michael Rose and Emery Kaiser, against third-party defendant, Joseph Gillen, in the identical amount that was awarded to plaintiff in its mortgage foreclosure judgment. An identical award in favor of Michael Rose and Emery Kaiser was made against Commonwealth, and in favor of Commonwealth against Gillen.
C. Michael Rose and Emery Kaiser were awarded the full amount of their respective reasonable attorneys' fees and costs (established in the amount of $43,766.37 for Michael Rose and $26,218.25 for Emery Kaiser) by way of additional judgment against Commonwealth.
*41 D. Commonwealth was directed to furnish Emery Kaiser with an owner's title insurance policy omitting the plaintiff's mortgage encumbrance therefrom, and Sears was directed to discharge of record its mortgage upon payment to it of the amount of the judgment awarded to it.
Third-party defendant-appellant Commonwealth appeals from that portion of the judgment ordering it to pay the full amount of the judgment awarded plaintiff Sears. Commonwealth also appeals from that portion of the judgment ordering it to pay Rose and Kaiser's counsel fees, and from that portion of the judgment ordering Commonwealth to issue an owner's title insurance policy free of plaintiff's mortgage encumbrance to Kaiser.
Sears cross-appeals from that portion of the judgment denying it a judgment of foreclosure as demanded in its complaint.
We consider first the trial court conclusion that Gillen was Commonwealth's agent. The trial court stated that "Commonwealth's liability for payment of the Sears mortgage does not turn on whether Gillen is or is not termed the `agent' of Commonwealth," but instead is based on Commonwealth's supposed obligation of fair dealing with Kaiser that it had failed to satisfy. Nonetheless, the trial court examined the agency issue as follows:
If it be assumed that the "agency" question must be answered, that answer, assuredly, should be "yes."
At virtually every step in this transaction, Commonwealth acted through and with Gillen. Not only did it receive the application for title insurance from Gillen, but it sent its title commitment, its instructions and its bill to Gillen. The critical direction that the Sears mortgage be "paid and cancelled" was sent to Gillen. And it was to Gillen, obviously, that Commonwealth looked to attend to that payment and cancellation.
The difference between the southern New Jersey and northern New Jersey closing procedures has been described above. Recall that in the former it is the title insurance company that acts as the "closer"  the "cruise director"  while under the procedure in the northern part of the state, the title insurance company is usually not even present at the closing. It is relieved of many responsibilities it would otherwise have because they are performed by the buyer's attorney. Indeed, virtually all of the acts done by the title company *42 representative in a southern New Jersey closing are performed instead by the buyer's attorney in the northern part of the state.
Notwithstanding the obvious benefits that flow to a title insurance company from having the buyer's attorney perform those functions, Commonwealth argues that Gillen cannot be viewed as its agent because he was the attorney for the buyer, and the law prohibits his representing both sides in a real estate transaction. But that argument ignores reality.
The fact is that at a typical northern New Jersey closing, as described in the trial testimony, the buyer's attorney usually wears three hats. He represents the buyer, of course. But he also represents the mortgagee, if there is one, by disbursing the mortgage funds under conditions imposed by the mortgagee and attending to execution and recording of the mortgage documents.
And, in addition, the attorney also represents the title insurance company by doing all those things which, in southern New Jersey, the company would have to do for itself. Last but not least, the attorney collects the funds to pay the company's bill.
We note initially that Gillen was not a statutory agent of Commonwealth. Gillen was not authorized in writing by Commonwealth to solicit insurance and collect fees on its behalf. In addition, Gillen could not have been a full-service agent because he did not "examine title to real estate, determine insurability in accordance with underwriting rules and standards prescribed by such title insurance company, and issue a title report, binder, or commitment to insure, and policy based upon the examination performed by such agent and determination of insurability as aforesaid." N.J.S.A. 17:46B-1(i). Accordingly, under that statutory provision of the Title Insurance Act, Gillen would not qualify as Commonwealth's "agent."
We next consider whether Gillen was Commonwealth's agent under common-law principles of agency. That an agency relationship is created when one person consents that another shall act on his behalf and that the principal shall control the acts of the agent is well-settled. Andryishyn v. Ballinger, 61 N.J. Super. 386, 391, 160 A.2d 867 (App.Div.), certif. denied, 33 N.J. 120, 162 A.2d 343 (1960); Arcell v. Ashland Chem. Co., 152 N.J. Super. 471, 494-95, 378 A.2d 53 (Law Div. 1977). The totality of the circumstances must be examined to determine if an agency relationship existed even where there may have been an absence of direct control over an agent. 2 C.J.S. Agency *43 § 36, at 599-600 (1972); see Andryishyn, 61 N.J. Super. at 391, 160 A.2d 867.
In Nappen v. Blanchard, 210 N.J. Super. 655, 662-63, 510 A.2d 324 (Law Div. 1986) the court held that an attorney, representing a buyer in a real-estate transaction, who stole funds that were to be used to pay off a preexisting mortgage, was neither the actual nor the apparent agent for the title insurance company. Id.
In this case, it is clear that although Commonwealth expected that Gillen would pay off the Sears mortgage and imposed this as a condition of its full title insurance commitment, Gillen was not directed by Commonwealth to do so. Commonwealth performed its own title search and issued the insurance policy. Gillen is listed on the application as an "Applicant" and not as an agent. The title insurance commitment also listed Gillen as an "applicant" and not as an agent. That Gillen was acting entirely on Kaiser's behalf in making the application and meeting the conditions of the commitment is apparent. The facts support only the conclusion that Gillen was Kaiser's agent, not that Commonwealth used Gillen as its agent.
Further, Kaiser, not Commonwealth, retained Gillen to represent him for the purchase of the Leonia premises from Rose. After the morning closing when Kaiser sold his home, he himself chose to endorse the proceeds, a $127,000 check, over to Gillen. Gillen stole Kaiser's money from that closing. Commonwealth had nothing to do with that transaction or with Gillen's ability to gain control of those funds and should not be held liable. See Restatement (Second) of Agency § 267, at 578-79 (1958).
Further, Commonwealth did not represent that Gillen was its agent. Kaiser was not even aware of Commonwealth's identity until the closing. Gillen had nothing displayed in his office to suggest he was Commonwealth's agent. Kaiser himself elected to use Gillen as his attorney and the closing took place at *44 Gillen's office. Accordingly, there was no apparent authority conferred on Gillen by Commonwealth.
We are unable to accept the trial court's imposition of liability on the theory that Commonwealth violated the "reasonable expectations" of the average person. Kaiser testified that he believed that he was receiving "free title" to the property. The trial court in imposing liability on Commonwealth reasoned:
Thus, Commonwealth certainly knew that there have been past occasions when a closing attorney has done what Gillen did here ... [b]ut it never told Kaiser about that risk! And it never gave Kaiser an opportunity to avoid, or insure himself against that risk. There is no reason why Commonwealth could not offer a purchaser like Kaiser the same closing protection it routinely offers lending institutions.... Alternatively, if Commonwealth chose not to extend such protection to Kaiser it could have met its obligation to him by telling him so. Such a notice, however, would have had to be "conspicuous, plain and clear." It would have had to make clear to Kaiser that if his attorney, Gillen, should fail to properly dispense Kaiser's funds at closing, Commonwealth would assume no responsibility.
The trial court relied on Gerhardt v. Continental Ins. Co., 48 N.J. 291, 297, 225 A.2d 328 (1966) and Caldwell v. Aetna Casualty and Surety Co., 107 N.J. Super. 456, 258 A.2d 900 (App.Div. 1969) to conclude that purchasers of title insurance policies are entitled "to the measure of protection necessary to fulfill their `reasonable expectations' and ... they should not be subjected to `technical encumbrances or to hidden pitfalls'." Gerhardt, 48 N.J. at 297, 225 A.2d 328 (citing and quoting Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961)).
The Gerhardt Court concluded that "exclusionary clauses must be `conspicuous, plain and clear.'" 48 N.J. at 297-98, 225 A.2d 328. In Caldwell v. Aetna Casualty, 107 N.J. Super. at 459, 258 A.2d 900, we stated:
We read Gerhardt ... to hold that a homeowner's policy in form such as this one, while technically not extending workmen's compensation coverage for injury to a domestic employee of the homeowner sustained under circumstances calling for compensation under the workmen's compensation law of this State, will nevertheless be construed to afford such coverage to the generality of purchasers of such policies because of the ambiguity of the policy in that regard to the average lay reader of the policy language. However, the court makes *45 clear that the company's intent not to extend such coverage will be vindicated if prominent notice of absence of the coverage is affixed to the face of the policy or otherwise brought home to the assured. (48 N.J. at 298 [225 A.2d 328]). It is, moreover, implied in the opinion, and indeed a logical corollary of its rationale, that a purchaser of the standard form policy involved in Gerhardt and here, who is affirmatively shown to realize he is not getting compensation coverage in buying the policy, will be held not to obtain it. To that extent we agree with the trial judge and defendant.
We do not find those cases to be applicable here. In this case there was an express provision stating that the Sears mortgage was to be paid as a condition of the issuance of full-title protection, otherwise the coverage was to be subject to the Sears mortgage. Also, there were no inconsistent provisions in the policy issued by Commonwealth. Accordingly, the trial court erred in relying on those cases. See Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 540, 562 A.2d 208 (1989).
The trial court also erred in its conclusion that Commonwealth did not treat Kaiser fairly under a fiduciary duty. The trial court concluded:
An overview of the roles of the parties in this transaction, the equities in favor or against their positions, and their abilities to protect against a loss such as occurred here, all demonstrate that among the innocent parties in this case, Commonwealth is the one that should bear this loss. [Emphasis added].
Our conclusion that Kaiser is to bear the loss may be unfortunate, but is not inequitable. Kaiser chose Gillen to represent him and entrusted to him funds from the morning closing to satisfy the Sears mortgage. Kaiser's testimony at trial revealed that on the morning of October 16, 1987, after the closing of title at which Kaiser sold his home, he received a net proceeds check of approximately $127,000. Kaiser endorsed that $127,000 check to Gillen, and Gillen then stole at least $108,991.19  the Sears mortgage payoff amount. Neither Commonwealth, Rose, nor Rose's attorney, Fricke, had any involvement in the morning closing. Kaiser's act of endorsing the $127,000 check to Gillen enabled Gillen to cause Kaiser's loss.
Accordingly, the loss should fall on Kaiser, rather than Commonwealth, pursuant to the fundamental rule of law that *46 where a loss must fall on one or more of a number of innocent parties, the loss should fall on the one or ones among them who, by his or her conduct, created the circumstances that led to the perpetrator causing the loss. See 3 Am.Jur.2d Agency § 81, at 591 (1986). See also Fountain v. Carlton, 88 N.J. Eq. 593, 103 A. 387 (E. & A. 1918) (when a lawyer stole proceeds given to him by his client which was to be used to pay off various liens, it was the client's money that was stolen); Wilson v. Walsh, 105 N.J. Eq. 396, 397, 148 A. 7 (Ch.Div. 1929) (that when one of two innocent parties must suffer a loss, it is to be borne by the one who first rendered the injury possible is a well-known principle of law). In this case, Kaiser endorsed the check over to Gillen before the closing involving Commonwealth, thereby placing Gillen in a position to steal the funds needed to satisfy the Sears mortgage. Kaiser must, therefore, bear the risk of foreclosure caused by his attorney.
We are, of course, troubled by the fact that under prevailing practice if a lending institution had advanced money towards the purchase price for the "Rose to Kaiser" condominium closing, a closing-protection letter, issued without additional fee by the title insurance company, would have protected the lender against Gillen's defalcation. See Clients' Security Fund of the Bar of New Jersey v. Security Title and Guar. Co., et al., 257 N.J. Super. 18, 607 A.2d 1319 (App.Div. 1992), also decided today. Here, however, no closing-protection letter was issued because there was no lending institution involved as the purchaser had the necessary purchase money without the need for financing.
We find no authority for this court to impose liability under the equivalent of a closing-protection letter. The obligation to indemnify for attorney defalcation in these circumstances, if it is to be imposed upon title insurance companies, must await action by the Legislature or the Commissioner of Insurance. We commend this issue to their immediate review.
On its cross-appeal Sears argues that it has a right of foreclosure against Kaiser and Rose and that the trial court *47 erred in refusing to grant it. We agree and, therefore, reverse the trial court's decision.
N.J.S.A. 2A:50-2 provides in relevant part:
Except as otherwise provided, all proceedings to collect any debt secured by a mortgage on real property, shall be as follows:
First, a foreclosure of the mortgage; and
Second, an action on the bond or note for any deficiency, if, at the sale in the foreclosure proceeding, the mortgaged premises do not bring an amount sufficient to satisfy the debt, interest and costs.
See Central Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J. Super. 289, 302, 448 A.2d 498 (Ch.Div. 1982) (a foreclosure proceeding "is solely an action quasi in rem and the relief granted is only against the land itself.") The issues that must be proven at a foreclosure proceeding are (1) the validity of the mortgage, (2) the amount of indebtedness, and (3) the right to the mortgaged land as satisfaction of the indebtedness. Id.
In this case, Sears has an undisputed mortgage which was a properly recorded purchase-money mortgage constituting a first lien on the property. Further, the uncontroverted testimony at trial demonstrated that there was outstanding principal and interest due to Sears with the payments being in default. The trial court found in a written decision that there is no question that Sears, whose mortgage remains unpaid, is entitled to relief. Likewise, at the hearing to establish the form of judgment, the judge stated that, "[t]here is no reason why Sears should not recover the full amount of its mortgage."
Both Rose and Kaiser maintain that this court should use equitable principles to conclude that Sears cannot foreclose on the mortgage. Roach v. Margulies, 42 N.J. Super. 243, 246, 126 A.2d 45 (App.Div. 1956) (quoting Sears Roebuck and Co. v. Camp, 124 N.J. Eq. 403, 411, 1 A.2d 425 (E. & A. 1938) ("`Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use.'")) Specifically, Rose and Kaiser argue that Kaiser, age seventy-two, is retired and lives in the condominium with a disabled niece. The fact that *48 Gillen stole from the innocent Kaiser is also stressed. However, it is clear that Sears is entitled to foreclose because it has a properly recorded mortgage that is in default. The court, in these circumstances, must grant Sears its statutory right to foreclosure. See N.J.S.A. 2A:50-2. If the threatened harm is to be mitigated, it should be through the prompt action and intervention of the New Jersey Lawyers' Fund for Client Protection.
Because we hold that Commonwealth is not liable to Rose or Kaiser, we need not consider Commonwealth's contention that the trial court erred by awarding them counsel fees pursuant to R. 4:42-9(a)(6). Neither Rose nor Kaiser qualify as "successful claimants" under R. 4:42-9(a)(6). Thus, the award of counsel fees to Rose and Kaiser must be reversed.
We reverse the various provisions of the judgment entered against Commonwealth. The matter is remanded to the Chancery Division for entry of a judgment of foreclosure and such other relief as may be appropriate on the cross-claims of the parties.
NOTES
[1] The judgment does not indicate that this award to Sears is to be entered against any person or property; however, by a subsequent provision Commonwealth is directed to satisfy the amount in full, at which time Sears is ordered to discharge and cancel its mortgage.