257 N.J. Super. 18 (1992)
607 A.2d 1319
CLIENTS' SECURITY FUND OF THE BAR OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SECURITY TITLE AND GUARANTY COMPANY AND SOUTHERN MORTGAGE ASSOCIATES, INC., DEFENDANTS-RESPONDENTS, AND ALLIANCE TITLE AGENCY, CENTER SAVINGS & LOAN ASSOCIATION, AND JOSEPH WITKOWSKI, DEFENDANTS. SECURITY TITLE AND GUARANTY COMPANY, PLAINTIFF-RESPONDENT,
v.
DOUGLAS C. HART, DEFENDANT-RESPONDENT. CLIENTS' SECURITY FUND OF THE BAR OF NEW JERSEY, PLAINTIFF,
v.
SECURITY TITLE AND GUARANTY COMPANY, DEFENDANT-APPELLANT, AND SOUTHERN MORTGAGE ASSOCIATES, INC., DEFENDANT-RESPONDENT, AND ALLIANCE TITLE AGENCY, CENTER SAVINGS & LOAN ASSOCIATION, AND JOSEPH WITKOWSKI, DEFENDANTS. SECURITY TITLE AND GUARANTY COMPANY, PLAINTIFF-APPELLANT,
v.
DOUGLAS C. HART, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1992.
Decided June 5, 1992.
*20 Before Judges SHEBELL, SKILLMAN and D'ANNUNZIO.
Daniel R. Hendi, Deputy Counsel, argued the cause for appellant Clients' Security Fund of the Bar of New Jersey in A-4570-90T1 (Clients' Security Fund of the Bar of New Jersey *21 now known as New Jersey Lawyers' Fund for Client Protection, attorneys; Daniel R. Hendi, on the brief and reply brief).
Louis J. Casagrande argued the cause for respondent Douglas C. Hart in A-4570-90T1 and A-5002-90T1 (Louis J. Casagrande, joined in the brief of Clients' Security Fund of the Bar of New Jersey).
George J. Lasky argued the cause for respondent Security Title and Guaranty Company in A-4570-90T1 and for appellant Security Title and Guaranty Company in A-5002-90T1 (Lasky and Cohen, attorneys; George J. Lasky, on the briefs and reply brief).
Jack A. Serpico argued the cause for respondent Southern Mortgage Associates, Inc. in A-4570-90T1 and in A-5002-90T1 (Jack A. Serpico, on the letter brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The underlying actions before us in these consolidated appeals give rise to issues arising from an attempt by a condominium owner to refinance the mortgage on his unit. Simply stated, his attorney stole the money which the refinancing mortgage company had directed the attorney to use to pay off the original mortgage thereby leaving the owner with two outstanding mortgage obligations and causing the refinancing mortgage company to be subject to the lien of the prior mortgage.
Appellant, Douglas C. Hart (Hart), was the owner of premises known as 45 Oak Lane in Eatontown, consisting of a condominium unit. Defendant, Joseph R. Witkowski (Witkowski), was an attorney-at-law of the State of New Jersey until he was suspended from practice on December 22, 1986 and disbarred on November 17, 1987.
Defendant, Alliance Title Agency (Alliance Title), is a title insurance agency located at 19 West Main Street, Freehold, *22 New Jersey, and is an agent of Security Title and Guaranty Company (Security Title). Security Title is headquartered in New York City and licensed to sell title insurance in New Jersey. Southern Mortgage Associates, Inc. (Southern Mortgage) is a Georgia corporation and was engaged in mortgage lending activities in New Jersey. Center Savings & Loan Association (Center) is a New Jersey corporation engaged in banking and mortgage lending activities in New Jersey.
On or about February 5, 1985, Hart purchased the unit from a developer, the Farinella Group, Ltd., for $95,090 and obtained from Center a $90,000 thirty-year mortgage, adjustable every three years, at a beginning rate of 12 1/2%. Hart engaged Witkowski to handle the purchase and close the loan from Center. Alliance Title provided a report of title and a closing-protection letter to Center in response to a request from Witkowski for a title policy insuring the proposed mortgage. The loan closed on February 5, 1985, and the mortgage was duly recorded.
Hart testified, and the settlement statement shows, that he paid a premium of $526 to Witkowski at the 1985 closing. Apparently, the money was never forwarded to Alliance Title, and, therefore, the title policy was not issued. Hart believed that he had purchased title insurance for the 1985 transaction, and never instructed Witkowski or anyone else to cancel the insurance.
In May, 1986, Hart sought to refinance the Center mortgage with another loan for a lower interest rate. Southern Mortgage offered a fifteen-year loan at 11.25%. Hart retained Witkowski to represent him in connection with the refinancing transaction. Witkowski ordered title insurance from Security Title on behalf of Hart as required by Southern Mortgage in its loan commitment. Alliance Title provided Witkowski with a title insurance commitment as part of the order for title insurance. That commitment cites the Center mortgage as an item *23 to be excepted from policy coverage unless satisfactorily removed at closing.
Alliance Title, as agent for Security Title, issued a closing-protection letter to Southern Mortgage naming Witkowski as the Approved Attorney for the closing. Southern Mortgage would not have forwarded the funds to Witkowski for the refinance closing without first having obtained a closing-protection letter from Security Title. The letter stated that upon certain conditions Security Title
hereby agrees to reimburse you for actual loss incurred by you in connection with such closings when conducted by an Issuing Agent (an agent authorized to issue title insurance for the Company) or an Approved Attorney (an attorney upon whose certification of title the Company issues title insurance) and when such loss arises out of:
1. Failure of the Issuing Agent or Approved Attorney to comply with your written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status or lien, or (b) the obtaining of any other document, specifically required by you, but not to the extent that said instructions require a determination of the validity, enforceability or effectiveness of such other document, or (c) the collection and payment of funds due you, or
2. Fraud or dishonesty of the Issuing Agent or Approved Attorney in handling your funds or documents in connection with such closing.
Conditions and Exclusions:
....
C. When the Company shall have reimbursed you pursuant to this letter, it shall be subrogated to all rights and remedies which you would have had against any person or property had you not been so reimbursed. Liability of the Company for such reimbursement shall be reduced to the extent that you have knowingly and voluntarily impaired the value of such right of subrogation.
On June 13, 1986, Southern Mortgage sent Witkowski a closing package that contained the prepared documents such as the Note and Mortgage, loan closing instructions, and the net check for the refinance. The check was endorsed by Hart and Witkowski so that Witkowski could use the proceeds to satisfy the Center mortgage. Southern Mortgage's closing instructions were directed to the closing attorney, Witkowski. The *24 first paragraph of the closing instructions designated Witkowski as Southern Mortgage's "closing agent."
As Southern Mortgage's agent, Witkowski was to follow all of the instructions that had been checked off on the lender's preprinted form. If he could not follow all of the instructions, Witkowski was to have called Southern Mortgage for clearance and a determination as to what was to be done. According to the testimony of an officer of Southern Mortgage, when a closing agent is unable to follow instructions, the funds are to be returned to Southern Mortgage.
Witkowski failed to pay off the Center mortgage and embezzled the funds. He did, however, pay Security Title's premium for title insurance. Hart did not see the closing-protection letter or communicate with the title insurance company.
After learning of Witkowski's misappropriation, Security Title purchased the Center mortgage and subordinated it to the Southern Mortgage mortgage, thereby placing the Southern Mortgage mortgage as a first lien against the property. Security Title claimed it took that action because it was necessary under its obligation to protect the priority of Southern Mortgage's lien. Security Title, however, never issued a title insurance policy even though it had collected the premium from Hart.
Security Title, having purchased the Center mortgage, demanded payment of it from Hart. Hart, however, was paying and continues to pay on Southern Mortgage's mortgage. He, therefore, refused to make payments to Security Title.
On May 13, 1987, Hart filed a claim with the Clients' Security Fund. The New Jersey Lawyers' Fund for Client Protection (Fund), formerly the Clients' Security Fund of the Bar of New Jersey, is an entity created by the Supreme Court of New Jersey under the provisions of R. 1:28-1 to -9 of the Rules of Court, to provide protection for the clients of all attorneys licensed in the State of New Jersey. New Jersey licensed attorneys, with few exceptions listed in R. 1:28-2, are required *25 to pay an annual sum set by the Supreme Court. That sum provides the main corpus of the Fund's monies for distribution to clients injured by dishonest attorneys.
The Fund did not make Hart whole for two reasons: first, the Fund is a source of last resource for victims without a collateral source of recovery, and it believed that there was a likelihood of recovery against Security Title and Southern Mortgage; second, Hart's claimed loss was $91,000 (the mortgage proceeds stolen by Witkowski). The loss occurred in 1986, and the Fund's cap for individual claimants that year was $50,000.
On October 20, 1988, Security Title, as owner of the Center Mortgage, filed a foreclosure complaint in the Chancery Division, Monmouth County, seeking to foreclose the interest of the property's fee owner  Hart. Hart answered the foreclosure complaint, counterclaimed against Security Title, and also filed a third-party complaint against Joseph Witkowski, his former attorney, now disbarred.
While the foreclosure action was pending, Hart sold the premises and closed title on October 17, 1989. The trial court ordered that the equity proceeds of the sale be held in escrow in lieu of the property. The Fund thereafter replaced one-half of the escrow so that Hart could make use of a portion of the money immediately. As a result, on November 7, 1989, the Fund paid Hart $20,986.07, and he assigned one-half of his interest in the escrow proceeds to the Fund.
The Fund had already agreed that Hart would be covered to the extent of $50,000 provided he sought to mitigate his losses by pursuing all collateral sources. The Fund, as plaintiff, brought its own action against Security Title on June 26, 1989, naming as defendants Security Title, Alliance Title, Southern Mortgage, Center, and Joseph Witkowski. Southern Mortgage cross-claimed against Security Title.
Security Title's foreclosure action and the Fund's action were consolidated on October 27, 1989 by the trial court. The *26 foreclosure was stayed on January 9, 1989. Alliance Title and Center were granted summary judgment on September 4, 1989.
The matter then proceeded to trial. The trial court rendered its opinion on April 12, 1991. The court entered final judgment dismissing the Fund's complaint and Hart's counterclaims, foreclosing the mortgage, and entering default judgment against Witkowski on April 23, 1991.
Defendant, Security Title, was ordered to pay defendant cross-claimant Southern Mortgage's attorney's fees. Defendant, Security Title, appeals that portion of the decision, and the Fund appeals from the dismissal of the complaint.

I.
The Fund maintains that the money stolen by Witkowski belonged to Southern Mortgage and not Hart. Accordingly, the Fund contends that the trial court erred in holding that the stolen money belonged to Hart and that he must suffer the loss rather than Southern Mortgage. We agree.
On the day of closing, Southern Mortgage issued to Witkowski "Loan Closing Instructions" which stated in relevant part:

LOAN CLOSING INSTRUCTIONS  The following are closing instructions which you, as our closing agent, [Emphasis added] must comply with as checked. Do not disburse any loan proceeds without full compliance with these instructions. [Emphasis in original].
....
Clear all judgements and liens versus all parties in chain of title including mortgagors.
....
Proof of payoffs  copies of transmittal letters and checks  Center Savings & Loan.
Those instructions make it clear that Southern Mortgage intended that Witkowski act "as our closing agent" in carrying out its Loan Closing Instructions. Witkowski, as Southern Mortgage's agent, could only lawfully disburse the loan proceeds *27 by fully complying with Southern Mortgage's instructions.
The testimony of Mr. Brackman, an executive vice-president at Southern Mortgage, confirms that Witkowski was supposed to fully comply with Southern Mortgage's instructions. Brackman testified:
Q. Okay. Are the bank's instructions intended to direct the closing attorney to do everything that is mentioned in those instructions? Is there any leeway that is given to him?
A. He must comply with what he is directed to do.
Q. Does he comply with all of the obligations?
A. Whatever he is told, whatever has been checked off that he has to do, he has to do.
Q. And what is expected to be done with that check if there is a condition on the instructions that is not met or could not be met at the time of settlement?
A. He has to call us up for clearance and a determination as to what has got to be done.
Q. Is the money given to the attorney in escrow or is the money and closing package given to the attorney outright and you tell them, "Follow our instructions"?
A. It is usually given on condition or it is wired, transferred into his escrow account or closing account, as the case may be.
Q. Do these monies physically become the property of the borrower?
A. I can't determine that.
....
Q. Have you ever had an instance where closing instructions could not be followed and the money and the loan could not be closed on the day of settlement?
A. Yes.
Q. And what happens to those proceeds?
A. It comes back to us.
Nonetheless, Southern Mortgage argues that based on the Promissory Note signed by Hart, he received the proceeds of the loan. The Note states in relevant part:
1. Borrower's Promise To Pay
In return for a loan that I have received, I promise to pay U.S. $91,000 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Southern Mortgage Associates, Inc.
Southern Mortgage asserts that Hart's signing of the Note evidences that he received the loan proceeds, and, therefore, the *28 money stolen was his and not Southern Mortgage's. Security Title adds that because the Fund recognized Hart's claim, implicit in that recognition is that Hart's money was stolen, and that since the Fund obtained standing under R. 1:28-1(a) it is now estopped from arguing that it was Southern Mortgage's and not Hart's money that was stolen.
We are convinced that Southern Mortgage expressly made Witkowski its agent for the closing. Part of Southern Mortgage's instructions was that Witkowski must pay off Center's first mortgage on the property. Thus, Hart was never to have received the money Southern Mortgage gave to Witkowski. Rather, Witkowski was to pay the money to Center under Southern Mortgage's explicit instructions and failing to do that Witkowski was required to return the money to Southern Mortgage.
Part of the consideration Hart received for executing the note and mortgage was that Southern Mortgage, through its agent Witkowski, would pay off the Center mortgage. However, because Witkowski failed to carry out that act as agent for Southern Mortgage, Hart never received the consideration from Southern Mortgage. We conclude that the money stolen was Southern Mortgage's and not Hart's, and thus, at that time, there was a failure of consideration for the Note and mortgage.
The Tenth Circuit of the Federal Court of Appeals examined a similar occurrence and held that under § 261 of the Restatement (Second) of Agency, a title insurance company was liable to a real estate purchaser for monies stolen by an escrow service president who, at the time of the theft, was acting as the title insurance company's agent. Richards v. Attorneys' Title Guar. Fund, Inc., 866 F.2d 1570, 1571 (10th Cir.), cert. denied, 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989). Section 261 provides:
§ 261. Agent's Position Enables Him to Deceive
A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon *29 third persons is subject to liability to such third persons for the fraud. [Restatement (Second) of Agency § 261, at 570 (1958)].
In this case, Southern Mortgage designated Witkowski as its agent and placed him in a position where he was to distribute the loan proceeds. That position enabled Witkowski to steal the proceeds rather than pay off the Center mortgage. Accordingly, it is clear that, under section 261, the loss should fall on Southern Mortgage.

II.
Based on our conclusion that the money stolen by Witkowski was Southern Mortgage's and not Hart's money, we further conclude that Security Title should not be permitted to foreclose and enforce against Hart the Center mortgage which Security Title obtained by assignment.
Witkowski, as agent of Southern Mortgage, was required to cancel the mortgage held by Center before dispersing any loan proceeds. Thus, even though Hart signed the "Note" evidencing that he was to repay $91,000 principal plus interest to Southern Mortgage, he did not at that time receive the promised consideration because he was not relieved of his obligation on the Center mortgage as he had bargained. Security Title was acutely aware of that fact when it took the assignment of the mortgage.
That the closing-protection letter issued to Southern Mortgage by Security Title, as quoted earlier in this opinion, protected Southern Mortgage in the event of loss occasioned by Witkowski's dishonesty is clear. Accordingly, Security Title was responsible to "reimburse" Southern for the "actual loss" caused by Witkowski's "fraud or dishonesty." Security Title however, in effect, only partially "reimbursed" Southern Mortgage by purchasing the Center mortgage. Although this placed Southern Mortgage in a first priority lien position against Hart's property, Hart had a defense to the Southern Mortgage obligation in that he was not paid the full consideration *30 he bargained for. He and the premises still remained subject to the Center mortgage which was to have been paid off and canceled of record by Witkowski as Southern Mortgage's agent.
Southern Mortgage is able to pursue Witkowski, and, therefore, Security Title is able to pursue Witkowski under its subrogation rights. However, because the money stolen by Witkowski was Southern Mortgage's, and the money was to be used to pay off the Center mortgage under Southern Mortgage's agreement with Hart, neither Southern Mortgage nor Security Title through subrogation have a right to foreclose against Hart on the Center mortgage.
Hart is entitled to have the mortgage lien and the underlying indebtedness canceled as the agreement between him and Southern Mortgage required. Only when that is accomplished will Security Title have placed Southern Mortgage in a position where Southern Mortgage has a fully enforceable mortgage lien and indebtedness against Hart supported by full consideration. Thus, Security Title in seeking to enforce the Center mortgage obligations against Hart acted contrary to its agreement with Southern Mortgage.
We find no merit to any suggestion that Hart is responsible to Security or Southern Mortgage for Witkowski's illegal acts merely because he selected and employed him. The Fund cites Corpus Juris Secundum and American Jurisprudence in support of its argument that Hart cannot be held liable for Witkowski's fraud. They provide:
The client is not liable ... for acts of the attorney which are outside the scope of the attorney's authority. Thus a client is not responsible for any illegal action taken or directed by his attorney which the client did not advise, consent to, participate in, and which was not justified by any authority that he had given.
....
[T]he client [is] not liable ... for a loss sustained by third persons through the theft of property by the attorney, the view was expressed that a client has the *31 right to assume that his business will be transacted honestly and efficiently by the attorney. [7A C.J.S. Attorney & Client § 190, at 309 (1980) (footnote omitted)].
Where the attorney is acting in his own interest or in fraud of his client, there is an exception to the general rule that knowledge of an attorney is imputable to his client, since it is almost certain that the attorney will then conceal the fraud or wrong. [7 Am.Jur.2d, Attorneys At Law § 140, at 203 (1980) (footnotes omitted)].
We agree that an innocent client is not liable to third parties for the misconduct of his attorney if the client does not direct, advise, consent, or participate in the attorney's improper conduct. See Fidelity Trust Co. v. Baker, 60 N.J. Eq. 170, 177, 47 A. 6 (Ch. 1900). This, of course, differs from Sears Mortgage Corp. v. Michael Rose and Emery Kaiser, et al., 257 N.J. Super. 33, 607 A.2d 1327 (App.Div. 1992), also decided today, where the attorney stole the client's money. Sears Mortgage did not involve a lender or the issuance of a closing-protection letter by a title insurance company. Consequently, the client had to absorb the loss.

III.
Security Title maintains that the trial court's decision to award counsel fees to Southern Mortgage is not supported by law, nor was it proper under the circumstances. We disagree and affirm the award of $7,300 in counsel fees to Southern Mortgage.
R. 4:42-9(a)(6) provides that attorneys fees may be assessed:
(6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant. [Emphasis in original].
An "award of counsel fees is authorized by [R. 4:42-9(a)(6)] even if the insurer's refusal to honor a policy demand was in good faith and despite the novelty of the legal question upon which its basic liability depended." Pressler, Current N.J. Court Rules, Comment R. 4:42-9(a)(6) (1991); see Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234, 333 A.2d 293 (App.Div. 1975).
*32 The closing-protection letter here was issued without fee as a service by the title insurance company in connection with the title insurance commitment insuring the mortgage interest of Southern Mortgage in the premises. We consider it to be part of the title insurance protection purchased.
Our Supreme Court has held that:
"A title insurance policy is a contract of indemnity under which the insurer for a valuable consideration agrees to indemnify the insured in a specified amount against loss through defects of title to, or liens or encumbrances upon realty in which the insured has an interest." Sandler v. New Jersey Realty Title Ins. Co., 36 N.J. 471, 478-79 [178 A.2d 1] (1962). Like other policies of insurance, title policies are liberally construed against the insurer and in favor of the insured. [Walker Rogge, Inc. v. Chelsea Title & Guar. Co., 116 N.J. 517, 528-29, 562 A.2d 208 (1989)].
Thus, we believe that Southern Mortgage should be considered a successful claimant on a policy of indemnity insurance evidenced by the language in the closing-protection letter. Therefore, under R. 4:42-9(a)(6) it is entitled to attorneys' fees.
We reverse the judgment in the foreclosure action and remand to the Chancery Division for entry of an order granting judgment in favor of Hart and compelling Security Title to cancel its mortgage. The trial judge shall also take appropriate action to disburse the escrow funds relating to the sale of the premises, in accordance with the agreement of Hart and the Fund, and shall grant such other relief as may be required in accordance with this opinion. We affirm the award of counsel fees to Southern Mortgage.