**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2783-24

US BANK NATIONAL
ASSOCIATION, as trustee
for MASTR ASSET BACKED
SECURITIES TRUST
2006-WMC2, MORTGAGE PASS
THROUGH CERTIFICATES,
SERIES 2006-WMC2,

     Plaintiff-Respondent,

 v.

DORIS WILLIAMS,

     Defendant-Appellant,

and

MR. WILLIAMS, HUSBAND OF
DORIS WILLIAMS, GENEVA
SMITH, and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC. as nominee for
FIRST FINANCIAL EQUITIES,
INC., its successors and
assigns,

     Defendants.

_____

Submitted May 13, 2026 – Decided June 12, 2026

Before Judges Mayer and Vanek.

On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. F-021727-13.

Doris Williams, self-represented appellant.

Brock & Scott, PLLC, attorneys for respondent (Brian Yoder, on the brief).

PER CURIAM

Defendant Doris Williams appeals from four orders entered in this foreclosure action: an August 30, 2017 order granting summary judgment to plaintiff US Bank National Association, as Trustee for MASTR Asset Back Securities Trust 2006-WMC2, Mortgage Pass Through Certificates, Series 2006-WMC2; a January 3, 2025 order reinstating plaintiff's foreclosure action after the lifting of a moratorium imposed during the COVID-19 pandemic; an April 11, 2025 order denying her motion to fix the amount due and granting final judgment to plaintiff; and an April 25, 2025 order denying her motion for reconsideration of the August 30, 2017 order. We affirm all orders on appeal.

In 2004, defendant obtained a loan from WMC Mortgage Corp. (WMC) in the amount of $288,800 secured by a mortgage on defendant's property. In 2005, defendant obtained a loan from Argent Mortgage Company, LLC (Argent)

2

in the amount of $344,850. On April 13, 2005, Argent recorded a mortgage on the property, thereby securing its loan to defendant. The mortgage securing the WMC loan was discharged in 2005 after receipt of the Argent funds. On February 7, 2006, defendant received two loans from First Financial Equities, Inc. (First Financial) allegedly to pay off the Argent loan and mortgage. The First Financial loans were for $346,000 and $35,000, respectively.

On February 23, 2006, defendant obtained another loan from WMC in the amount of $389,250 (2006 WMC loan). A mortgage on defendant's property securing the 2006 WMC loan was recorded on March 3, 2006. According to a March 7, 2017 certification in the foreclosure action from Carol Covolus, an employee with Sutton Land Title Agency (Sutton Land),[1] the only recorded mortgage on the defendant's property at the time of the 2006 WMC loan closing was the Argent mortgage. In that certification, Covolus averred "funds from WMC's [2006] loan were used to satisfy the [Argent m]ortgage."

The HUD-1 settlement statement for the 2006 WMC loan and mortgage transaction indicated $348,545.61 was paid to "HOMOEO SERVICING."[2] The

---

[1]  Sutton Land was WMC's title insurance agent in the 2006 WMC loan transaction.

[2]  This may be a typographical error as "HomEq Servicing" is consistent with other documents in the record.

HUD-1 statement further indicated defendant received $25,615.29—the difference between the 2006 WMC loan of $389,250 and the $348,545.61 owed by defendant under the Argent loan and mortgage plus $15,089.10 in settlement charges. Defendant waived her right to review and receive the HUD-1 statement. On September 20, 2006, HomEq Servicing Corporation as attorney-in-fact for plaintiff discharged the Argent mortgage.

After the 2006 WMC loan closing, according to Covolus, Sutton Land conducted a record search "to ensure that the [m]ortgage was properly recorded and that the [Argent m]ortgage was properly discharged of record." That title search revealed the two First Financial mortgages on defendant's property. The initial First Financial mortgage was recorded on February 23, 2006, the same day defendant closed on the 2006 WMC loan and mortgage. The second First Financial mortgage was recorded on March 1, 2006. Neither of the First Financial mortgages appeared of record when Sutton Land conducted its title search in preparation for the 2006 WMC loan closing.

After making this discovery regarding the First Financial mortgages, Covolus contacted PEP Title Agency which recorded the First Financial mortgages. According to Covolus, PEP Title Agency "advised [defendant] rescinded the First Financial [m]ortgages and further advised the First Financial

4

[m]ortgages were sent for recording by mistake" and "it would record discharges of the First Financial [m]ortgages." Despite Sutton Land's follow up communications with PEP Title Agency, the First Financial mortgages were not discharged of record.

Defendant failed to make the November 1, 2011 payment for the 2006 WMC loan and made no payments thereafter. On January 30, 2012, WMC assigned the loan and mortgage to plaintiff. The assignment was recorded on February 3, 2012.

On June 24, 2013, plaintiff filed a foreclosure complaint against defendant for defaulting under the loan. In its complaint, plaintiff alleged the two First Financial mortgages had "been satisfied[] but not discharged of record."

On December 6, 2013, a judge denied defendant's motion to dismiss the foreclosure complaint, leading defendant to file her answer and counterclaim. Defendant denied the First Financial mortgages were satisfied. She further alleged a failure of consideration because "[p]laintiff did not pay off the previous mortgages."

In May 2014, the trial court directed plaintiff to file for summary judgment no later than July 21, 2014. However, this foreclosure action was part of a larger loss mitigation review by plaintiff conducted through August 2014. Because

5

plaintiff failed to timely move for summary judgment, the foreclosure action was dismissed without prejudice in a September 18, 2014 order. The court reinstated the matter on November 21, 2014.

In orders entered on April 10, 2015, the motion judge denied without prejudice plaintiff's motion for summary judgment and defendant's cross-motion to dismiss the complaint. In denying both motions, the judge found a substantial issue remained as to whether there was a prior mortgage "of record" and whether it was satisfied by plaintiff or plaintiff's predecessor-in-interest.

On March 4, 2016, the court dismissed plaintiff's complaint for lack of prosecution. Two months later, the court reinstated the foreclosure action.

On August 30, 2017, Judge Robert J. Brennan granted summary judgment to plaintiff. In an attached statement of reasons, Judge Brennan noted "[t]he defenses to foreclosure actions [we]re narrow and limited [and t]he only material issues in a foreclosure proceeding [we]re the validity of the mortgage, the amount of indebtedness, and the right of the mortgagee to foreclose on the mortgaged property." The judge found "[p]laintiff clearly establishe[d] standing and the right to foreclose upon the property, the validity of the documents, and [d]efendant['s] default on the [2006 WMC loan]." Based on the pleadings, the

6

judge found "no material issue of fact exist[ed] with respect to the [p]laintiff's right to foreclose."

In striking defendant's fraud defenses and dismissing defendant's counterclaim for fraudulent concealment and consumer fraud, the judge concluded defendant "fail[ed] to provide any particulars" supporting her fraud allegations as required under Rule 4:5-8. The judge specifically found defendant "fail[ed] to provide specifics on the following affirmative defenses: doctrine of improper notice of breach, unjust enrichment, equitable estoppel, failure to join an indispensable party, lack of privity, unclean hands, failure of consideration, lack of ownership, [and] lack of existence."

On March 18, 2020, the COVID-19 national emergency resulted in a moratorium on all pending foreclosure actions. In 2021, plaintiff placed the case on hold for an internal compliance review in 2021. In November 2024, plaintiff moved to reinstate the case.

In a January 3, 2025 order, Judge Frank J. DeAngelis reinstated plaintiff's foreclosure case. He found plaintiff established good cause for the reinstatement and lack of prejudice to defendant.

On March 4, 2025, plaintiff moved for the entry of a final foreclosure judgment. In response, defendant moved to fix the amount due, arguing

plaintiff's refusal to satisfy the two First Financial mortgages "void[ed] the [WMC 2006] note and mortgage." Defendant claimed entitlement to a refund of $136,526.93, the amount she previously paid on the prior loans.

In an April 11, 2025 order, Judge DeAngelis granted a final foreclosure judgment to plaintiff and denied defendant's motion to fix the amount due. In denying defendant's motion, the judge found defendant failed to "allege[] with specificity a particular objection to [p]laintiff's calculations of the amount due." Additionally, the judge stated defendant's argument based on plaintiff's alleged failure to pay off prior loans had "been repeatedly rejected by the [c]ourt."

Judge DeAngelis also denied defendant's 2025 motion for reconsideration of the 2017 summary judgment order. The judge concluded defendant simply reiterated her prior arguments that plaintiff failed to properly serve notice of its intent to foreclose and failed to pay off the prior loans.

We first address defendant's argument the trial court erred in granting summary judgment to defendant. She argues plaintiff's failure to pay off the prior First Financial mortgages vitiated consideration for the 2006 WMC loan and mortgage and relieved defendant of her payment obligations under those agreements. Defendant alleges she "obtained the [2006 WMC loan] to pay off the existing first and second mortgages held by First Financial" and plaintiff

8

"commit[ed] theft by deception" by not paying off those mortgages. Defendant argues plaintiff's "criminal act void[ed] the [n]ote and discharge[d] the [m]ortgage."

We review a trial court's order granting summary judgment de novo, applying the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether there is a genuine issue for trial.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)).

Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Friedman v. Martinez, 242 N.J. 449, 471-72 (2020) (quoting R. 4:46-2(c)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Id. at 472 (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). A court should grant summary judgment "[o]nly 'when the evidence is so one-sided that one party must prevail as a matter of law.'" Petro-Lubricant Testing Labs., Inc. v.

Adelman, 233 N.J. 236, 257 (2018) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)) (internal quotation marks omitted).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Invsts. Bank v. Torres, 457 N.J. Super. 53, 65 (App. Div. 2018) (quoting Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993)). "A lender's right to foreclose is an equitable right inherent in a mortgage, triggered by a borrower's failure to comply with the terms and conditions of the associated loan." Ibid. (citing S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193, 202 (Ch. Div. 1957)). "[A] party seeking to foreclose a mortgage must own or control the underlying debt." Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010)). Standing is conferred by "either possession of the note or an assignment of the mortgage that predated the original complaint." Deutsche Bank Tr. Co. Americas v. Angeles, 428 N.J. Super. 315, 318 (App. Div. 2012) (citing Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 216 (App. Div. 2011)).

Defendant does not contest the existence of the 2006 WMC loan or her signing the note securing the mortgage to obtain the $389,250 loan amount from

10

WMC. Nor does defendant dispute that WMC assigned the note and mortgage to plaintiff. Rather, defendant argues she was relieved of her obligation to make any payments under the 2006 WMC loan because plaintiff committed fraud by failing to discharge the First Financial mortgages.

In support of her argument, defendant relies on Clients' Security Fund of the Bar of New Jersey v. Security Title and Guaranty Co., 257 N.J. Super. 18, 24, 29 (App. Div. 1992). In that case, we held a mortgagee plaintiff was not entitled to foreclose against a refinancing defendant where an attorney acting as the plaintiff's agent failed to pay off the prior mortgage with the new mortgage loan as agreed upon and embezzled the funds instead. Ibid. However, in that case, there was sufficient evidence in the record to determine the prior mortgage was required to be satisfied and discharged from funds obtained in a subsequent mortgage. Id. at 22-23 (noting title insurance agency's commitment letter "cite[d] the [prior] mortgage as an item to be excepted from policy coverage unless satisfactorily removed at closing.").

Here, defendant failed to provide any proof plaintiff agreed to pay off the two First Financial mortgages as consideration for the 2006 WMC loan. Even if plaintiff had agreed to pay off all mortgages of record, the Argent mortgage was the only recorded mortgage prior to the 2006 WMC loan closing.

Defendant concedes the two First Financial mortgages were recorded on February 23 and March 1, 2006, after closing on the WMC loan. Thus, the First Financial mortgages could not have been discovered through a title search conducted for the scheduled 2006 WMC loan closing on February 23, 2006.

In contrast, plaintiff provides evidence supporting valid consideration for the WMC note and mortgage based on the $25,615.29 paid to defendant through the HUD-1 settlement statement and corroborated by the Covolus certification. Although defendant alleges the HUD-1 statement is fabricated and the Covolus certification contains false statements, she provides no evidence, beyond her unsupported assertions, contradicting the authenticity of the HUD-1 settlement statement or documenting the purported falsities in the Covolus certification.

"In all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable." R. 4:5-8(a). Defendant failed to present evidence that plaintiff had a duty to pay off the two First Financial mortgages or that plaintiff fraudulently neglected to pay off the mortgages, fabricated an HUD-1 settlement statement, and submitted a false certification to conceal the alleged fraud. Absent evidence supporting her allegations of fraud or negating the validity of the 2006 WMC loan, the amount

12

of indebtedness, or plaintiff's right to foreclose, defendant failed to demonstrate the judge erred in granting summary judgment to plaintiff.

We next address defendant's arguments regarding the January 2025 order reinstating plaintiff's foreclosure action. Defendant fails to explain why the judge's reinstatement of the foreclosure action was improper. We review decisions on reinstatement motions for an abuse of discretion. Baskett v. Cheung, 422 N.J. Super. 377, 382 (App. Div. 2011).

Rule 4:64-8 governs dismissal of foreclosure actions for lack of prosecution. Rule 4:64-8(b) provides: "A matter may be reinstated after dismissal . . . only on motion for good cause shown." However, "[a] matter may be reinstated only three times (not counting any dismissals based on federal exemptions) before a new complaint must be filed by plaintiff in order to proceed." Ibid.

Rule 4:64-8 does not define "good cause" but the rule's language "generally follows Rule 1:13-7." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:64-8 (2018). "Rule 1:13-7(a) is an administrative rule 'designed to clear the docket of cases that cannot, for various reasons, be prosecuted to completion.'" Ghandi v. Cespedes, 390 N.J. Super. 193, 197 (App. Div. 2007) (quoting Mason v. Nabisco Brands, Inc., 233 N.J. Super. 263, 267 (App. Div.

13

1989)). Under <u>Rule</u> 1:13-7, "the right to 'reinstatement is ordinarily routinely and freely granted when plaintiff has cured the problem that led to the dismissal even if the application is made many months later.'" <u>Ibid.</u> (quoting <u>Rivera v. Atl. Coast Rehab. Ctr.</u>, 321 N.J. Super. 340, 346 (App. Div. 1999)). "[A]bsent a finding of fault by the plaintiff and prejudice to the defendant, a motion to restore under [<u>Rule</u> 4:64-8] should be viewed with great liberality." <u>Id.</u> at 197.

According to the record, plaintiff's foreclosure action was dismissed and reinstated twice—once in 2014 for failure to move for summary judgment and once in 2016 for lack of prosecution. <u>Rule</u> 4:64-8 allows for a dismissed case to be reinstated three times for good cause. The January 2025 order was the third reinstatement of plaintiff's foreclosure action and, therefore, did not contravene <u>Rule</u> 4:64-8.

Further, the judge found good cause to reinstate the foreclosure action in January 2025 because all foreclosure proceedings had been suspended during the COVID-19 national emergency. He also noted defendant continued to reside at the mortgaged property without making any payments during the COVID-19 pandemic. Yet, plaintiff continued to pay all carrying costs for the property.

Defendant does not contend plaintiff's delay in seeking to reinstate the foreclosure complaint was due to a lack of diligence or bad faith. Nor does

A-2783-24

defendant allege she suffered any prejudice as a result. On this record, we are satisfied the judge did not abuse his discretion in finding good cause in January 2025 to reinstate plaintiff's foreclosure action.

We next consider defendant's argument the judge erred in entering a final judgment of foreclosure and denying her motion to fix the amount due. Defendant argues she is entitled to restitution of her prior loan payments in the amount of $135,526.93. We disagree.

Rule 4:64-1(d)(3) provides:

> Any party having the right of redemption who disputes the correctness of the affidavit of amount due may file with the Office of Foreclosure an objection stating with specificity the basis of the dispute and asking the court to fix the amount due. On receipt of a specific objection to the calculation of the amount due, the Office of Foreclosure shall refer the matter to the judge in the county of venue, who shall schedule such further proceedings and notify the parties or their attorneys of the time and place thereof.

Defendant is not requesting an offset or credit in establishing the amount due under the 2006 WMC loan. Rather, she seeks to void the 2006 WMC loan entirely and, as a result, her obligation to pay any sums under that note and mortgage. Therefore, defendant's refund argument must comply with Rule 4:64-1(d)(3).

In her motion to fix the amount due, defendant failed to raise any "specific objection to the calculation of the amount due." Instead, she attempted to re-litigate her lack of consideration argument related to plaintiff's purported failure to pay off the First Financial mortgages. This argument was previously rejected by the trial court. Even if defendant's challenge substantively fell within the scope of Rule 4:64-1(d)(3), her argument fails because she provided no specific evidence the 2006 WMC loan lacked consideration.

We also reject defendant's argument the judge erred in denying her motion for reconsideration of the summary judgment order. We review the denial of a motion for reconsideration for abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). A motion for reconsideration must "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions that counsel believes the court has overlooked or as to which it has erred." R. 4:49-2.

Here, defendant offered no new arguments or controlling decisions in support of reconsideration other than repeating her arguments regarding a lack of consideration for the 2006 WMC loan and alleged fraud associated with the two First Financial mortgages. Because the judge correctly rejected these arguments in granting summary judgment and in denying defendant's motion to

16

fix the amount due, we are satisfied the judge did not abuse his discretion in denying defendant's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division